### Fred McCarty v. The State.

*No. 1032:    Decided May 27th, 1896.*

36   135
38   608

1.  **Horse Theft—Estray—Unknown Owner—Diligence by Grand Jury to Ascertain Owner—Charge.**

Where an indictment for horse theft, alleged the owner to be unknown, and the evidence showed that the animal had no known owner, and was recognized as an estray, the State was not required to prove that diligent inquiry was made by the grand jury to ascertain the owner; and that they failed to find such ownership; nor was there any necessity for the court to charge especially with reference to the subject.

### 2.  Same—Charge—Unknown Owner.

On a trial for horse theft, where the charge of the court, in effect, instructed the jury that, in order to constitute theft of property of an unknown owner, the ownership of the horse must be unknown, and the defendant must know the fact that the ownership was unknown.  Held: Erroneous, as defendant's knowledge could cut no figure, and he could steal a horse, although he might not know his owner was unknown.  Still such charge could not prejudice defendant.

### 3.  Same—Estray.

An estray horse has no known owner, and the same rules apply in cases of theft of such an animal, as when the owner is alleged to be unknown; and it is not necessary, in either event, to complicate the case with the estray laws, unless there is something in the testimony indicating that defendant may have taken up the horse as an estray.

### 4.  Same—Recent Possession and Reasonable Explanation.

Where the charge of the court, on a trial for horse theft, in effect, instructed the jury, that if defendant was found in recent possession of the stolen horse, and gave an account of his possession; and the State showed its falsity, this circumstance would alone authorize the jury to convict.  Held: Erroneous, and clearly on the weight of evidence.

APPEAL from the District Court of Bexar.   Tried below before Hon. ROBERT B. GREEN.

This appeal is from a conviction for horse theft, the punishment being assessed at five years' imprisonment in the penitentiary.

The case is stated in the opinion.

[No brief for either party found with the record.]

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of a horse, and given five years in the penitentiary, and prosecutes this appeal.   The indictment charges that the horse alleged to have been stolen was the property of and in the possession of an unknown owner.   The evidence tends to show that the animal in question, being a gray horse, ran on the range in Kimball County, and generally with the horses belonging to Rogers Bros.   When he was first discovered he was a stallion, and was castrated by them.   The defendant himself, during part of the year 1892, worked for Rogers Bros., and during said time, on several occasions, he caught the horse and rode him, and would turn him loose again on the range.   He remarked, on one occasion, to one of the Rogers brothers, that he had a notion, when he left there, to take that stray horse.   Rogers made no reply to this.   When the defendant left the employment of Rogers, which was some time in December, 1892, and left that vicinity, the horse was not seen in that neighborhood afterwards.   Some time during the summer of 1893, the evidence shows that defendant sold the horse in San Antonio to one Joe Baxter.   All the evidence in the case goes to show that the horse in question was known on the range in Kimball County as an estray.   He ran at large, was in no one's possession, and had no known owner.   It is contended by the appellant that, inasmuch as no proof was made as to any effort before the grand jury to ascertain the ownership of said horse, the charge of the court on that subject was improper, and the conviction cannot, therefore, be sustained,

because there was a failure to make this proof. The horse had no known owner and was recognized as an estray, and only in cases where there is some proof tending to show that, by the use of diligence, the owner might have been ascertained, or there is some proof suggesting an ownership, is it necessary to charge especially upon this subject. The proof made on the trial of the case before the jury showing the fact, which was not at all controverted, that the horse had no known owner, would render it unnecessary for the State to go further, and show that diligent inquiry was made by the grand jury to ascertain the ownership, and they failed to find such ownership. From the proof made on the trial, it would be presumed that proper diligence was used before the grand jury to ascertain the fact of ownership. Appellant has presented a number of bills of exception, and has incumbered the record unnecessarily with repetition, and with questions that ought not to have been made on the trial of the case. In all of this mass of exceptions, there are but two that we deem worthy of consideration, and they are barely raised by the bills of exception. However, we would have been compelled to notice these had no exceptions been taken. The court, after defining theft, when applying the law to the facts of this case, instructed the jury as follows: "If, in this case, you believe, from the evidence, beyond a reasonable doubt, that the horse's owner was unknown, and that the defendant knew this fact, and that, with this knowledge, the defendant took possession of the said horse, with the intent to steal him, and, without complying with the laws regulating estrays, sold said horse, then you will find the defendant guilty, and assess his punishment at confinement in the penitentiary," etc. Here the court tells the jury that, in order to constitute theft of property, under the circumstances, the ownership of the horse must be unknown, and the defendant must know the fact that the ownership was unknown. We fail to see how the defendant's knowledge in this regard would cut any figure. He could steal the horse, although he might not have known the fact that the ownership was unknown. This portion of the charge, however, would make it more onerous for the State, and could not prejudice the defendant. Of course, if the defendant took the horse of the unknown owner "with the intent to steal him" —that is, if we are to understand, by "stealing," that he took said horse fraudulently and without the consent of the unknown owner, and with the intent to deprive such unknown owner of the value thereof— then the charge would be all right, and the compliance or noncompliance, the sale or the nonsale of the horse, would be immaterial, and we could reject these latter expressions as surplusage. It would have been a very easy matter, in this case, it seems to us, to have charged the jury correctly, without involving the charge with the question of the laws regulating estrays. Furthermore, believing that the court interwove in his charge the matter of disposing of said horse without complying with the laws regulating estrays, he should have also charged, in favor of the defendant, that, if he took the horse as an estray horse, without the

fraudulent intent, at the time he took possession of him, without the consent of the unknown owner, to deprive such unknown owner of the value thereof, they should acquit him. As far as theft is concerned, in regard to ownership, an estray horse has no known owner; and the same rules apply in this respect to an estray horse as to the horse of an unknown owner, and it is not necessary, in either event, to complicate the case with the estray laws, unless there is something in the testimony indicating that the defendant may have taken up the horse as an estray horse. There was nothing in the testimony in this case tending to show that he took the horse as an estray under the estray law. If such had been the case, it might have been proper for the court to have presented the case under Art. 771 (being Art. 918, Penal Code, 1895). As stated, however, we fail to find anything in the record suggesting that the defendant did or intended anything with reference to the animal in question as an estray animal, in connection with the laws regulating estrays. The animal in question had no known owner, and might be termed an estray. If the defendant fraudulently took the animal, intending, at the time, to commit the theft of said animal, he would be guilty of theft; but, if he had no such intention at the time, and took it up as an estray, and then did not comply with the laws regulating estrays, and formed the intent afterwards to appropriate said horse and sold him, he would not be guilty of theft, but would only be guilty of violating the estray laws. But, as we have already said, this feature was not in the case at all. The court has failed to give a correct and straight charge on theft of property, and has unduly and improperly complicated a charge of theft with a charge of disposing of an estray horse. The court also gave the following charge: "You are instructed that, if you believe, from the evidence in the case, that the property alleged to have been stolen was so stolen, and recently thereafter was found in the possession of the defendant, and that the defendant when thus found in the possession of the same, gave an explanation of his said possession, which appears reasonable and probably true, then, before you will be warranted in finding a verdict of guilty in this case, you must be satisfied from the evidence, beyond a reasonable doubt, that the other testimony in the case establishes the falsity of the explanation so made by the defendant." This was tantamount to telling the jury that, if the defendant was found in the recent possession of the stolen horse, and he gave an account of his possession, and the State showed its falsity, this circumstance alone authorized the jury to convict the defendant. This was clearly a charge upon the weight of the evidence, and we have repeatedly so held. We again call attention, when a charge of this character is rendered necessary by the testimony, to the case of Wheeler v. State, 34 Tex. Crim. Rep., 350. For the errors pointed out, the judgment is reversed, and the case remanded.

*Reversed and Remanded.*