GEORGE JOHNSON ET AL. v. THE STATE.

No. 1972.   Decided June 6, 1900.

</div>

1. **Constitutional Law—Erroneous Charge Not Excepted to, etc.—Practice on Appeal.**

Article 723, Code of Criminal Procedure, which provides that objections to an erroneous charge of court, to be available, must have been saved by bill of exceptions or presented on motion for a new trial, is constitutional; and unless a defendant has reserved his complaint of the charge in a bill of exceptions or in his motion for a new trial the error can not be reviewed on appeal, however erroneous or fundamental it may be. Davidson, Presiding Judge, dissenting.

2. **Same—Legislative Authority to Pass Laws Affecting the Rights and Remedies of an Appellant.**

The Legislature is empowered with ample and complete authority to pass any law regarding the means, manner, and mode of assertion of any of a defendant's or appellant's rights and remedies in court, and when such means, etc., are adequate for the assertion of either statutory or constitutional rights, the law is constitutional.

3. **Same—Object of the Statute, Article 723, Code of Criminal Procedure.**

The object and legislative intent in passing article 723, Code Criminal Procedure, was to require a defendant to assert his rights as to errors in the charge promptly, so that the trial court might have an opportunity to rectify and correct them, and that unless a bill of exceptions was reserved at the time or the matter brought forward as error in the motion for new trial, no action could be taken by the court on appeal with reference to it; and such requirements are reasonable and must be complied with by defendant, otherwise he is without remedy on appeal. Davidson, Presiding Judge, dissenting, holds that article 723 is violative of article 2, section 1, Constitution, in that it is an attempted interference by the Legislature with the functions of the judiciary department of the State government. That the Legislature can not dictate to the Court of Criminal Appeals how it shall render its opinions. That article 723 in effect destroys the constitutional right of trial by jury and a trial by due course of law.

APPEAL from the District Court of Wilbarger. Tried below before Hon. G. A. BROWN.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The indictment charged George Johnson, Charlie Ross, and Horace Jones with the burglary of the private residence of O. A. Swinburne. They were jointly tried and jointly convicted.

There is no statement of facts and no bill of exceptions in the record.

*Weeks & Fleager* filed an able argument for appellant on his motion for rehearing.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellants were convicted of burglary, and their punishment assessed at confinement in the penitentiary for a term of two years.

We find no bill of exceptions nor statement of facts in the record. Appellants urge error in this court for the first time as to the charge of the court. If article 723, Code of Criminal Procedure, is constitutional, then, however erroneous the charge of the court may be, appellants having reserved no exception in the court below, either by bill or motion for new trial, they are without remedy at law. We think said article is constitutional, and unless appellants complain of the charge below, and reserved that complaint in a bill of exception or in motion for new trial, then such error can not be reviewed in this court, however erroneous or fundamental it may be. We think a bare inspection of this article, coupled with the eight preceding articles, clearly manifests this to be the legislative intent. Article 723 reads as follows: "Whenever it appears by the record in any criminal action, upon appeal of defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, which error shall be excepted to at the time of the trial or on motion for new trial." It has never been successfully controverted, and never really seriously denied, until of late, that the Legislature of the State has not ample and complete authority to pass any law regulating the means, manner, and mode of assertion of any of appellant's right in the court; and so long as this means, manner, and mode be adequate for the assertion of either statutory or constitutional rights, just so long are the statutes and remedies provided by law constitutional. Article 715 provides: "The judge shall give to the jury a written charge, in which he shall distinctly set forth the law applicable to the case, but he shall not express any opinion as to the weight of evidence, nor shall he sum up the testimony. This charge shall be given in all cases of felony whether asked or not." Article 716 provides that the judge shall not discuss the facts; article 717 provides that either party may ask written instructions; article 718, that the charge shall be certified by the judge. Article 719 provides that, in criminal actions for misdemeanor, the court is not required to charge the jury except at the request of counsel on either side, but, when so requested, shall give or refuse such charges, with or without modification, as are asked in writing. Article 720 provides: "No verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties." Article 721 provides: "When charges are asked, the judge shall read to the jury only such as he gives." Article 722 provides: "The jury may take with them, in their retirement, the charges given by the court, after the same have been filed; but they shall not be permitted to take with them any charge or portion of a charge that has been asked of the court and which the court has refused to give." Then follows the above quoted article 723. Now, then, in order to construe these articles, they must be considered

together. If the judge fails to read to the jury his charge, as provided in article 721, or should give the jury a verbal charge, as provided in article 720, or should disregard any of the eight preceding articles, then, before the same could be availed of in this court as cause for reversal, it must be excepted to by appellant at the time of the trial by bill, or in motion for new trial; otherwise, it is considered as waived, and we are not authorized to consider it. If appellant excepts to the ruling of the court by bill or in motion for new trial, then he has a perfect, complete, and adequate remedy provided by statute for the assertion of his rights. If he fails to do so, then he is cut off, and has no remedy at law or right to a reversal of the case in this court, by sheer force of the fact that any of the eight preceding articles have been disregarded. To hold otherwise would be to say that the Legislature could not provide a reasonable, rational, and adequate remedy for the assertion of rights guaranteed under the Constitution of this State.

The object of article 723, and the legislative intent in passing the same, was to give the trial court an opportunity to rectify and correct errors and rulings in the trial of the cases before them. Hence it is provided that appellant should assert, either in bill of exceptions or motion for new trial, the alleged errors in the trial court, in order that said court may have an opportunity of granting a new trial and correcting such errors. If appellant can come to this court, and complain for the first time of the action of the trial court, without bill of exceptions or motion for new trial, why not permit appellant to disregard the actions and rulings of the trial court, as far as urging them for new trial, and insist for the first time in this court upon their consideration? How it can be seriously insisted that the requirements of said article are not reasonable has never been made to appear in brief or argument in any case filed before us.

The Twenty-fifth Legislature prescribed a new form of recognizance for appeal to this court in misdemeanor cases, and this form provides that the fine and costs assessed against appellant in the lower court must be stated. We have repeatedly held that this is a prerequisite to an appeal to this court. Numerous cases under this statute have been dismissed by us where parties have been deprived of legal, and perhaps constitutional, rights by sheer force of the fact that they have not complied with the strict letter of the law regulating recognizances. It has never been contended that this statute is unconstitutional, yet one can readily imagine where several constitutional rights might be denied appellant, and, simply by reason of the fact that his recognizance is not in proper form, his case is dismissed, and his constitutional rights thereby denied him. This is nothing but a remedy,—a reasonable, rational, and adequate legislative requirement for an appeal to this court. If the party follows that remedy, his case is properly docketed and considered; but, if he does not, his appeal is dismissed because of his failure to comply with the adequate remedy provided by the Legislature for the assertion

of his rights.   The same might be said of statement of facts; for unless they are filed within term time, or within ten days after the adjournment of the court under a ten-day order, they will not be considered; or if they are filed in term time, and not properly certified by the trial court, they will not be considered.   Whenever a statement of facts is stricken out for any or either of these reasons, it frequently deprives a party of a constitutional or legal right at least.   But it has never been gainsaid, nor is the statute claimed to be unconstitutional.   Suppose a court in the trial of a murder case admits evidence going to show defendant has committed arson, robbery, burglary, and theft on divers and sundry occasions, but there is no bill of exceptions reserved to this action of the trial court; this can not be considered by us, but we have uniformly held that defendant must reserve his bill of exceptions.   This is a statutory requirement,—a remedy under which appellant can assert his legal rights.   If he does not follow the remedy, he loses his rights; the remedy being adequate and reasonable.   The same might be said of the homestead law:   A party is sued for his homestead, but makes no answer to the citation.   Judgment would be rendered by default.   Yet this is a constitutional right, guaranteed by express stipulation, that no one's homestead shall be taken under execution or any character of judgment, except for the purchase money and taxes.   Yet if one has a judgment against A., and levies on his homestead, buys it in at execution sale, brings trespass to try title, and the homestead plea is not properly filed, the owner is deprived of his home.   This is a remedy, but it is manifestly an adequate remedy, and if he does not see fit to assert his rights in the courts at the proper time, and in the proper way and manner, he loses his rights; and he can not be heard to complain in courts of last resort that his constitutional rights have been taken away from him, when he utters not a word in the lower court to assert those rights.   We might continue indefinitely to cite instances where the Legislature in its discretion has provided, under the Constitution, divers and sundry other manners and means for the assertion of legal and constitutional rights, and where the courts of last resort have upheld the constitutionality of such remedies; but this is unnecessary.

Prior to the adoption of article 723, the old article read as follows: "Whenever it appears, by the record in any criminal action upon appeal of defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall be reversed, provided the error is excepted to at the time of the trial."   The old article was properly held by this court as being mandatory upon us, and as requiring of us a reversal of the case, whether or not a violation of the eight preceding articles, or any one of them, was calculated to injure his rights; that we had no discretion in the matter; and, in deference to the decision asserting this proposition, the Legislature amended said article, and passed the amendment above indicated.   This article has been passed upon by this court in several instances, and its validity thoroughly main-

tained.  Darter v. State, 39 Texas Crim. Rep., 45; Pena v. State, 38 Texas Crim. Rep., 333; Garza v. State, 38 Texas Crim. Rep., 317.  In the latter case, Judge Davidson, delivering the opinion of the court, uses this language: "Under this latter act [referring to article 723] this court is prohibited from reversing the judgment on errors in connection with the charge, unless they are material, and excepted to at the time of the trial or on motion for new trial."  In English v. State (Texas Criminal Appeals), 45 Southwestern Reporter, 713, Judge Hurt, delivering the opinion of the court, said: "Under the recent act of the Legislature, in order to require a reversal for errors in the charge of the court, bill of exceptions must be reserved, or it must be excepted in motion for new trial.  This was not done.  As presented by the record, this judgment must be affirmed; and it is so ordered."  A careful perusal of the last-mentioned case indicates that this article would apply even if the charge had been oral, the case being a felony.  See also Bailey v. State (Texas Crim. App.), 45 S. W. Rep., 708; Ford v. State, 41 Texas Crim. Rep., 1.

If we revert to the common law authorities on this subject, the foregoing position is amply sustained.  Endlich, Interpretation Statutes, page 387, uses this language: "No person has a vested right in any course of procedure, nor in the power of delaying justice or deriving benefit from technical and formal matters of pleading.  He has only the right of prosecution or defense in a manner prescribed, for the time being, by or for the court in which he sues, and, if statute alters that mode of procedure, he has no right other than to proceed according to the altered mode.  The remedy does not alter the contract or the tort.  It takes away no vested right; for the defaulter can have no vested right in a state of the law which left the injured party without or with only a defective remedy.  If the time for pleading was shortened, or new powers of amending were given, it would not be open to the parties to gainsay such a change; the only right thus interfered with being that of delaying or defeating justice, a right little worthy of respect.  *  *  * In this country the general rule seems to be in accordance with the English, that statutes pertaining to the remedy,—that is such as relate to the course and form of procedure for the enforcement of a right,—but do not affect the substance of the judgment pronounced, and neither directly nor indirectly destroy all remedy whatever for the enforcement of the right are restrospective, so as to apply to causes of action subsisting at the time of their passage."  In Black, St. Const., p. 265, we find the following:  "No person has a vested right in any form of procedure.  He has only the right of prosecution or defense in the manner prescribed for the time being, and, if this mode of procedure is altered by statute, he has no other right than to proceed according to the altered mode.  Indeed, the rule seems to be that statutes pertaining to the remedy, or course, or form of procedure, but which do not destroy all remedy for the enforcement of the right, are retrospective, so as to apply to causes of

action subsisting at the time of their passage. Statutes which relate to the mode of procedure, and affect only the remedy, and do not impair the obligations of the contract or vested rights, are valid. * * * It is competent for the Legislature at any time to change the remedy or mode of procedure for enforcing or protecting rights, provided such enactment does not impair the obligations of contract or disturb vested rights, and such remedial statutes take up procedure in pending causes where they find them." Again, in Potter, Dwar. Stats., this language is used: "But it is well established law that the individual ciitzen, with all his rights to protection, has no vested right in what is known in the law as 'remedies,' nor in any particular existing remedy. He has no such vested interest in the existing laws of the State as precludes their amendment or repeal by the Legislature, nor is there any implied obligation on the part of the State to protect its citizens against incidental injury occasioned by changes in the law. * * * If the remedy does not impair the right of property itself, if it still leaves the party a substantial remedy according to the course of justice as the right existed at the time of the passage of the statute, it does not impair the obligation of the contract, nor will it be held to do so merely because the new remedy is less efficient, less speedy, or less convenient than the old one." Page 471. In Cooley, Constitutional Limitations, page 327, we find the following: "But, so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose. The Legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure, in its discretion, though it can not lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime."

So, none of the rights guaranteed under the eight preceding articles to article 723 are taken away from appellant, provided he reserve a bill of exceptions, or insists upon such rights in his motion for new trial. Clearly, this is giving him an adequate remedy for the assertion of such rights.

But can it be seriously contended that appellant has a vested right in any of the said eight articles? Certainly not. The Legislature could abrogate every one of them at the next session without violating the letter or spirit of the Constitution, thereby relegating the courts back to the common law mode and manner of trial. Then, if so, why should appellant now insist that said articles give him a vested right in the same? Said eight articles have no more constitutional sanctity than article 723, and, in considering and passing upon the same, they must be

construed in conjunction with said article 723; and, when so construed, there is but one conclusion to be drawn, and that is that the violation of any one of said eight articles will not be reviewed unless the same were calculated to injure the rights of defendant, and which error must be excepted to at the time of the trial or on motion for new trial.

In the time allotted for the investigation of this case we have been unable to review all the authorities, but we note that the Supreme Court of Missouri, in State v. Reed, 89 Missouri, 171, 1 Southwestern Reporter, 225, upholds the validity of a similar statute to the one we are now considering. There we find this language: "Now, in the application of the general rules before stated, and with these statutes in full force, it has been ruled that instructions are not before this court for consideration when the motion for new trial is not incorporated in full in the bill of exceptions, though the instructions are contained therein. State v. Dunn, 73 Mo., 586; State v. McCray, 74 Mo., 303. So it was said in State v. Preston, 77 Missouri, 294: 'It is also insisted that the court erred in giving instructions. This objection can not be considered by us, for the reason that it is not alleged in the motion for new trial that the court misdirected the jury.' The same ruling was made in State v. Emory, 79 Missouri, 461; and in State v. Bayne, 88 Missouri, 604, it was held two instructions asked by defendant and refused would not be considered, because exceptions were not taken at the time of the ruling of the court. It must follow that the instructions given in this case can not be reviewed." Without commenting in detail upon other authorities and statutes, we cite the following, which are very similar to the article under consideration and decisions thereunder: Rev. Stats. Mo., 1889, sec. 4297; Rev. Stats. Wis., 1889, sec. 4720; People v. Guidici, 100 N. Y., 503, 3 N. E. Rep., 493; People v. Kelly, 113 N. Y., 647, 21 N. E. Rep., 122; State v. Davidson, 73 Mo., 428; Williams v. State, 61 Wis., 290, 21 N. W. Rep., 56; Flower v. Nichols, 55 Neb., 314, 75 N. W. Rep., 864.

It follows, therefore, that, appellant by neither bill of exceptions nor motion for new trial having complained of the court's charge, we can not review any supposed error in the charge, however erroneous it may be; that article 723, Code of Criminal Procedure gives appellant a perfect, complete, and adequate remedy for the assertion of his rights; and if, through ignorance, neglect, or any other cause, he fails to avail himself of this remedy, we can not review the matter, and appellant is without remedy. We might discuss this matter further, but we do not deem it necessary. No reversible error appearing in the record, the judgment is in all things affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—I dissent from the opinion of the majority, and believe the judgment should be reversed, though the charge was not excepted to in the court below in any manner, and the error was presented for the first time on appeal. The charge given is

on the weight of the evidence, and such as has frequently been condemned by this court and reversals awarded on account of the error. Penal Code, art. 715; Wheeler v. State, 34 Texas Crim. Rep., 350; Pollard v. State, 33 Texas Crim. Rep., 197, 202; Hayes v. State, 36 Texas Crim. Rep., 146; McCarty v. State, 36 Texas Crim. Rep., 135; Franks v. State, 36 Texas Crim. Rep., 149; Berry v. State, 37 Texas Crim. Rep., 44; Grande v. State, 37 Texas Crim. Rep., 51; Wheeler v. State, 38 Texas Crim. Rep., 71; Millsaps v. State, 38 Texas Crim. Rep., 570. In Millsaps v. State, 38 Texas Criminal Reports, 570, this charge was given: "And in this connection you are also charged that when an instrument is shown to be a forgery under the rules of law as herein stated, and shown to be in possession of some one (other than the person whose act it purports to be), such possession, standing alone, is sufficient to warrant a conviction for the execution of the same." There was no statement of facts in that case. Judge Henderson, speaking for the court, uses this language: "This would be, in effect, telling the jury that if the evidence shows the instrument was not the authorized act of the Waco Hardware Company, and it was found that the instrument purported to be the act of the Waco Hardware Company by its officers, and was not authorized by it, but it was found in the possession of appellant, this circumstance alone would authorize the jury to convict defendant. This charge is unquestionably on the weight of testimony, and no statement of facts could authorize the court to give such a charge." The case cited is in harmony with the decisions of this State, which require a reversal even when the evidence is not before us where the charge is on the weight of the evidence. It is also in harmony with another line of decisions, to the effect that, even in the absence of the testimony, judgments will be reversed when the charge is not applicable to any state of facts and is injurious. Prior to the amendment of article 723 by the Act of 1897, charges of this character were held to be reversible error, whether excepted to or not, when assigned as error only in this court. These cases are so numerous that it is unnecessary to cite them. It is the principle of our Code, gathered from every provision relating to that subject, to prohibit a judge from expressing an opinion as to the weight of testimony or the credibility of witnesses. This underlies our entire criminal jurisprudence, constitutional and statutory, and relegates all controverted issues of fact to a decision by a jury. He is as strictly prohibited from doing this in the charge as from expressing an opinion in the admission and rejection of the testimony. Kirk v. State, 35 Texas Crim. Rep., 224; Leverett v. State, 3 Texas Crim. App., 217. The trial court can not even advise the jury as to the process of reasoning upon facts. For authorities, see White's Ann. Code Crim. Proc., sec. 809. Judge Brooks, for the majority, says: "We think said article is constitutional. Unless appellant complains of the charge below, and reserve that complaint in bill of exceptions, or in motion for new trial, then such error can not be reviewed in this court, however erroneous or fundamental it may be."

From this no character of error committed by the court with reference to articles 715 to 722, inclusive, can be error, unless excepted to in one of the modes provided in said article. I can not agree to such a proposition. If this is law, the trial court can charge the jury to disregard every word of exculpatory evidence introduced by the accused, and convict on the State's testimony, and the accused would be helpless unless exceptions were reserved in one of the modes specified. The court could refuse to give the required charge in writing, and it would not be error. In a sharply contested case, where the State's evidence dis-. closed murder, and that for defendant a clear case of self-defense, under this ruling the court could with impunity charge the jury to disregard the evidence of appellant, and give absolute verity to that of the State,— in so many words direct a conviction,—and unless an exception be reserved it could not be assigned as error on appeal. To sustain this, End. Interp. Stats.; Black, Stats., Const.; Cooley, Const. Lim.; Potter, Dwar. Stats., are cited. These citations are treating the question of remedies under, as well as the effect of, retrospective laws, and only that character of legislation, when not violative of the fundamental law of the land. These citations have no bearing on this question, and it is unnecessary to discuss them. Some Missouri decisions are cited, as well as those of other States; also Revised Statutes, Missouri, 1889, section 4297, and Revised Statutes, Wisconsin, 1889, section 4720, as similar to article 723.

To show the inapplicability and dissimilarity of the Missouri statute, I quote it as follows: "Sec. 4297. No assignment of error or joinder in error shall be necessary upon any appeal or writ of error in a criminal case issued or taken pursuant to the foregoing provisions of this article; but the court shall proceed upon the return thereof, without any delay, and render judgment upon the record before them." Construing this statute, the Supreme Court of Missouri in State v. Davidson, 73 Missouri, 428, says: "In civil causes, for failure to assign errors, the appeal may be dismissed or the judgment affirmed. 2 Wag. Stat., p. 1066, sec. 22. In civil causes, also, the statute is express that each party shall 'furnish the court with a clear and concise statement of the case and the points intended to be insisted on in argument.' Id., p. 1067, sec. 31. In civil causes, also, the judgment will be affirmed if appellant fails to prosecute his appeal by filing in this court a perfect transcript, and such transcript be produced here by the opposite party. Id., p. 1069, sec. 49. There are no such provisions in criminal causes, and the practice therein, if we are to follow the statute, is totally dissimilar from that in civil causes. In the former class of causes no assignment of error or joinder in error is necessary, nor statement of the case or points intended to be insisted on, but on the return of the appeal it becomes the duty of this court to 'render judgment on the records' before us. Id., p. 1115, sec. 20; State v. Barnett, 63 Mo., 300. The case of State v. Armstrong, 46 Missouri, 588, where the judgment was affirmed because the defendant failed to prosecute his appeal by

presenting a brief of the facts and points on which he relied, was not well considered, and is not law." State v. Reed, 89 Missouri, 171, 1 Southwestern Reporter, 225, is to the same effect. It says: "In criminal causes in this court no assignment of error or joinder in error is required, and it is made the duty of this court to proceed and render judgment upon the record." So, it will be seen that article 4297, above cited, has nothing to do with the question. In State v. Hopper, 71 Missouri, 425, 431, construing a statute of that State, which provided that under an indictment for murder in the first degree the jury must inquire, and by their verdict ascertain, under the instructions of the court, whether defendant was guilty of murder in the first or second degree, the Supreme Court said: "It has always been held to be the duty of the court in trials for murder, if the evidence would warrant it, to instruct the jury on murder in the second degree; and if the above section was meant to require such an instruction to be given, without regard to the evidence, we do not hesitate to say that it is such an invasion of the province of the judiciary as can not be tolerated without a surrender of its independence under the Constitution. The Legislature can pass any constitutional law it may deem proper, and the courts are bound to observe it, but it can not prescribe for them what instructions they shall give in a cause, unless they have previously embodied into a legislative enactment, as a law of the land, the substance of such instructions. We hold, therefore, that in the view to be taken of section 1234 (Revised Statutes 1879), the trial courts can not in a trial for murder give an instruction in regard to murder in the second degree, unless there is evidence which would warrant the jury in finding the accused guilty of murder in that degree." So it would seem the Supreme Court of that State has put its seal of condemnation in emphatic terms upon legislative interference with the independency of the judiciary. The Missouri statute cited by Judge Brooks simply provides for a disposition of the appeal on the record, without error joined or assigned, and thus differentiates it from civil causes. The law has never been otherwise in this State. With us the criminal appeal is tried on the record without joinder of errors.

The Wisconsin statute (Revised Statutes 1889, section 4720), reads as follows: "Any person who shall be convicted of an offense before the circuit court, being aggrieved by any opinion, direction, or judgment of the court in any matter of law, may allege exceptions to such opinion, direction, or judgment, which exceptions being reduced to writing in a summary mode and presented to the court at any time before the end of the term, and if found conformable to the truth of the case, shall be allowed, signed by the judge, and thereupon all of the further proceedings in that court shall be stayed, unless it shall clearly appear to the judge that such exceptions are frivolous, immaterial or intended only for delay, and in that case judgment may be entered and sentence awarded in such manner as the judge may deem reasonable, notwithstanding the allowance of such exceptions."

This provides, and was only intended to provide, an appeal under circumstances therein stated, after conviction, and before entry of judgment, and, in order to stay such judgments pending appeal under such state of case, the exceptions were required. There seem to be three modes of appealing in Wisconsin,—two after conviction and before judgment; the third, after judgment. Where the party desires to stay the judgment pending the appeal, he could do so; otherwise, he brought his appeal on writ of error. This was not an infringement, and could not be construed into an infringement, of the right of appeal. There is a remarkable difference between amplifying rights, extending rights, enlarging rights, and curtailing rights, or abolishing rights. The Wisconsin statute belongs to the first class, and gave the convicted person three modes of taking his appeal, and, if he failed in the first two, he could then carry his case up on writ of error. State v. Compton, 84 Wisconsin, 355, 54 Northwestern Reporter, 578, construes said article 4720. Article 723, Code of Criminal Procedure, is exactly opposite to the Wisconsin statute in its tendency and effect, and belongs to the curtailing class. It is a disabling statute. Under the construction placed upon it by the majority, defendant's constitutional right of a fair trial by a jury on the merits of his case and the evidence may be cut off suddenly and without remedy, and this by a construction in direct contravention of the evident legislative intent, plainly expressed.

In Brown v. Kalamazoo Circuit Judge, 75 Michigan, 274, 283, 42 Northwestern Reporter, 827, 830, 5 Lawyers' Reports, Annotated, 226, 230, it was said: "It is within the power of the Legislature to change the formalities of legal procedure, but it is not competent to make such changes as to impair the enforcement of rights." This is the correct rule. It is too well known to require discussion that in amending article 723 the Legislature was seeking to avoid the effect of the old article in regard to reversals. Under the former statute, the appellate court was called upon to reverse judgments in criminal causes whether there was injury or not, provided the charges were excepted to on the trial. The present statute requires affirmances "unless the error was calculated to injure the rights of defendant." It has no reference to the settled law in this State, wherein judgments were reversed when the error was of a fundamental nature, or which impinged upon the rights guaranteed the accused, of a fair "trial by an impartial jury," due process of law, etc. Nor was it intended to take from the jury the right to decide controverted issues of fact, nor was it passed for that purpose, nor does it attempt to do so. It expressly recognizes the validity of the eight preceding articles, refers to and emphasizes their binding force, and thereby expressly requires the court to give a written charge in all felony cases, whether asked or not, distinctly setting forth the law applicable to the case. 11 Am. and Eng. Enc. of Law, 1 ed., p. 26, and notes. Article 716 places

it beyond the province of the judge in criminal cases to discuss the facts, or use any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. "It is his duty to state plainly the law of the case." Article 714 (not included within the eight, and therefore not affected by it) provides especially that the jury are the exclusive judges of the facts in every criminal case, but not of the law in any case. They are bound to receive the law from the court, and be governed thereby. Article 766 (not referred to in article 723) provides: "The jury in all cases are the exclusive judges of the facts proved, and of the weight to be given the testimony. Article 767 (also outside the provisions of article 723) expressly prohibits the court from discussing or commenting upon the weight of the testimony, or its bearing upon the case, or from making any remark calculated to convey to the jury his opinion of the case; and article 817 requires the court, where he has misdirected the jury as to the law, to grant a new trial. Then it may be deduced from an inspection of article 723 that the Legislature never intended, and does not provide, that a case shall not be reversed where there is fundamental or radical error. It only undertakes to limit the action of this court in reversing cases to those where the error is of a nature doubtful in its bearing upon the case; that is, such as may be calculated to injure the rights of the party on trial. To give it any other construction would be violative of the Constitution, as well as the plain provisions of the statute itself. In construing this statute, it must be presumed that the Legislature did not intend to exceed its rightful authority (Black, Statutes Construed, page 89), and that it, like every other statute, must be construed with reference to the intent, scope, and purpose in enacting it. Id., p. 56. The spirit and reason of the law must be looked to (Id., page 48) and it must be construed so as to be consistent with other statutes bearing upon the same question, and which have the same general object in view. Id., p. 98. It must be presumed that the Legislature never intended to do injustice. If the statute is doubtful, or ambiguous, or fairly open to more than one construction, that construction should be adopted which will avoid injustice as a result. We must also keep in mind another rule of construction; that is, the presumption that the Legislature did not intend an absurdity, or that absurd consequences shall follow its enactments. Such a result as will bring confusion, absurdity, or injustice must be avoided, if the terms of the act admit. Endlich, Interpretation Statutes, sections 258, 260, lays down the same rules. On the construction given this statute by the majority, there is not only a want of harmony, but it is so construed as to authorize bringing about great injustice, and is a practical overturning of constitutional guaranties. Again, if the Legislature can dictate to this court when it shall or shall not reverse a judgment, the functions of the court have been usurped by that body, and the judges simply are made clerks to record legislative judgments. This would be a direct infraction of the Constitution, debasing to, and destructive of, the in-

dependence of the judiciary. It will not be presumed the Legislature intended either to violate the Constitution, perpetrate injustice, bring about absurdities, or destroy the independence of the judiciary. If so, it would be the plain duty of this court to hold such action absolutely null and void.

Article 2, section 1, of the Constitution, distributes the powers of government into three co-ordinate branches,—judicial, legislative, and executive,—and expressly provides, further, that "no person or collection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." The court itself can not direct a verdict of guilty under the plea of not guilty. 6 Am. and Eng. Enc. of Law, p. 93, and notes for authorities. If courts can not do this, inevitably the ·Legislature can not, nor can it direct courts to do so. The Legislature can not direct courts how they shall render opinions. By the terms of its creation under the Constitution, this court decides appeals and renders opinions. To this end it was created and organized. But as to how it shall render those opinions, the Legislature is powerless to direct or command. This has been held with reference to requiring courts to give written opinions. For authorities collated on this subject, see Id., p. 1049, and note 12. The strongest opinion upon this subject which has been called to. my attention was written by Chief Justice Field, of the Supreme Court of California, before his elevation to the supreme bench of the United States. Houston v. Williams, 13 Cal., 24. See also Vaughan v. Harp (Ark.), 4 S. W. Rep., 751. It is well settled the Legislature can not place a binding construction on the Constitution. For authorities on this question see 6 Am. and Eng. Enc. of Law, p. 1036, notes 4, 5, and 6; Powell v. State, 17 Texas Crim. App., 345, 350. Nor can the Legislature authorize the opening of a case for rehearing. 6 Am. and Eng. Enc. of Law, p. 1038. It is beyond the power of the Legislature to provide conclusive evidence of any fact. Id., p. 1050, and notes. The Constitution having pointed out the specific mode or method of trial (i. e., by jury), no other method can obtain. All persons accused of felony. must be tried by jury, and every disputed issue of fact must be settled by the jury, and, unless these issues are properly submitted, the jury can not, of course, properly decide them. Id., p. 928. That the Legislature can not direct the courts in the interpretation of statutes in this State is well settled. Powell v. State, 17 Texas Crim. App., 350; Martin v. State, 21 Texas Crim. App., 1. Article 723, in assuming to dictate to this court how it shall decide a case, is absolutely null and void. This court will obey the Constitution, and follow legal methods in deciding cases, and in giving reasons for such decision; and this must necessarily be so while the Constitution is the law of the land, and the judiciary remains independent of the legislative department. Again, article 1, section 10, of the Bill of Rights, provides: "In all criminal prosecutions, the accused shall have a speedy public

trial by an impartial jury." Section 15 of article 1, provides: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Section 19: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by due course of the law of the land." "Due course of the law of the land" has been so often discussed and decided it would seem a work of supererogation to again enter that field. That the Bill of Rights and the Constitution is a part "of the law of the land" will not be questioned by courts nor the Legislature with any confidence of success. What is understood by a fair trial or a "trial by an impartial jury" is equally well settled. I will not enter into a discussion of that subject further than to state that any action on the part of the Legislature or courts, which undertakes to deprive a party accused of crime of a fair trial, or "an impartial jury," or a "fair trial by an impartial jury," would be nugatory. How an impartial jury can be constituted has been the subject of much legislation and varied discussion by courts, but whenever that impartial jury has been impaneled there is no question of its absolute right to pass upon, untrammeled by dictation from courts or Legislature, every disputed issue of fact arising on the trial, guided alone by the court as to the law applicable to those issues, and any attempt on the part of the court to dictate to the jury how they shall decide such disputed question, under a plea of not guilty, would be subversive of every rule of constitutional law, every question of right, and every principle applicable to jury trials, and subversive of our criminal jurisprudence. To authorize a trial court to inform a jury that any issue is adverse to the accused, when that issue is disputed, would be an infraction of the inviolability of jury trials and violative of that portion of the bill of rights which guarantees the accused a trial under "due process of the law of the land." If article 723, supra, undertakes to limit this court in its authority to honestly, correctly, justly, or legally decide cases, it is unconstitutional, and therefore void; or, if it undertakes to ·dictate when the court shall reverse or affirm cases, it is equally unconstitutional; or, if it undertakes to inhibit the court from deciding an appeal according to constitutional requirements, it would be a plain infraction of those sections of the Constitution pointed out. Article 723 is therefore unconstitutional in that it impairs the right of trial by jury, because it transfers, or seeks to transfer, to the court the right to dictate to the jury how they shall decide the case. It is unconstitutional because it requires an affirmance, however erroneous the charge may be. It takes away the right of trial by jury, and transfers it to the court, to be avoided only by exception; thus making the constitutionality of a law dependent upon an exception reserved. The constitutionality of a law does not depend upon a bill of exceptions reserved to some act of the court.

Again, it is unconstitutional because it sets aside trial by jury. Does

it invade the province of the jury? Let us see. If the trial judge can, without an exception reserved, charge the jury to disregard the facts, and convict the accused, why can he not with equal legal propriety discharge the impaneled jury, and himself render a judgment of conviction? What is the difference, legally speaking? It is, in effect, inevitably the same thing. In either event, the jury trial is set at naught. One is as hurtful as the other. One is as unjust as the other, and attended with as injurious consequences, and as much out of harmony with the fundamental principles of our jurisprudence. They both invade and set at naught the jury trial. Inviolability of jury trials is the express command of the written law, constitutional and statutory. A jury trial can not be waived. Art. 22, Code Crim. Proc. This can not be accomplished any more by charging the jury to convict than by refusing a jury in the first instance. A jury can not be waived directly; therefore the waiver can not be forced upon the accused by devious and indirect methods. The jury trial should remain inviolate as prescribed by our written law and jurisprudence, and it should be the duty of all courts to see that it does so remain. By way of illustration, suppose the court should instruct the jury to disregard the right of self-defense; would not this be directly violative of the right of trial by jury? Most clearly. Self-defense has always been, among English-speaking people, not only a right, but an "inalienable right, of every human being." "Self-defense, therefore," says Blackstone, "as it is justly called the primary law of nature, so it is not, neither can it be in fact, taken away by the law of society." 3 Bl. Comm., 4. "It may be rightfully exercised by every human being whether beneath a despot's rule or on freedom's soil, whether he exists in a heathen land, or breathes beneath a Christian sun. But still it is a law of necessity, and while in its just and proper exercise it places the subject of it above and beyond the influence of civil or municipal law, renders him irresponsible for his acts done by permission, and not amenable to the civil authority." Thus wrote Judge Bell, one of the greatest judges who has graced the Supreme Court of this State, in Lander v. State, 12 Texas, 476. And so that great commentator of English law, Sir Wm. Blackstone. It was so in the beginning, and should so remain to the end of our jurisprudence and civilization, despite devious and sinister attacks from whatever source. It was so recognized as the law of this State in McCandless v. State, ante, p. 58, wherein Judge Henderson, speaking of the court, said: "It [self-defense] is the natural and inalienable right of every human being, and it is to be held sacred and inviolable by any law of human or civil institution." If self-defense is "an inalienable, inviolable right," or "is to be held sacred and inviolable by any law of human or civil institution," how can it be made alienable and violable for want of a bill of exceptions? If it can be it is not inalienable or inviolable. Self-defense is "sacred and inviolable by any law of human or civil institution," and is a question of fact to be determined by the jury. It can not be taken away so as

to deprive the accused of it by the court's charge. If this be true of self-defense, why not of a jury trial?

But it is said that this is procedure. In a certain sense, this is correct. So are the provisions of the Constitution with reference to "jury trials" procedure. "Due process of law" is procedure. I believe the assertion is a safe one that no court would hold the filing and return of an indictment by a grand jury to be other than procedure. The organization and constitution of the grand jury—every act it performs—is procedure; the impanelment of the trial jury is procedure; the obtaining of witnesses for or against the accused is procedure; every step in the prosecution is procedure; and if the Legislature has the right, under their power to provide reasonable rules of procedure, to nullify or restrict the trial by an impartial jury, destroy the judiciary, or overturn due process of law, then that body may, at its will, set aside every provision of the Constitution where the rules of procedure enter, or can be deducible, by simply passing statutes and calling them "procedure." It is thoroughly settled by a long unbroken line of decisions that the Legislature can not destroy the indictment required by the Constitution by providing allegations which do not charge the offense. Hewitt v. State, 25 Texas, 725, to the present time. See Huntsman v. State, 12 Texas Criminal Appeals, 619, for discussion of this question.

Bills of exception have been and are required with reference to admission and rejection of testimony; rules have been provided by the Legislature with regard to making, certifying, and sending up statements of facts on appeal; and decisions sustaining these are relied on as authority on the question at issue. There is no analogy. When a question of fact arises, a bill of exceptions, or some certain rule of procedure, is required. Why? Because such matters must be verified in some manner, so that the truth thereof may be judicially known by the appellate court, and it is necessary that some definite rule be prescribed by which such matters can be settled certainly for the information and action of the appellate court. This must be done by an impartial arbiter,—the trial judge. Where the Constitution is silent, or relegates it to the legislative discretion, that body can provide reasonable rules. But not so in opposition to the Constitution. But these rules of legislative procedure do not apply with the same force to charges, because they are written, and speak for themselves, under the verity of the trial judge. The bill of exceptions and motion for new trial can not add verity to charges written and given by the judge, nor in any manner affect them. They remain as written, and speak for themselves.

Now, with reference to the statements of fact, and extension of ten days beyond adjournment of the court at which the case is tried in which to file same. This is singled out. The Constitution fixes the terms of court; that is, it requires at least two terms of the district court each year in each county, and laws have been held null which might

operate, if upheld, to limit this number to less than the necessary two terms. It is a rule of almost universal application that all orders, decrees and actions of the trial court with reference to matters transpiring during the term shall be closed or entered during its legal term, and orders, judgments, and decrees, except in special cases, occurring subsequent to the adjournment of the term, are treated as nullities. So, in the absence of the helping statute authorizing it within ten days after such adjournment, a statement of facts would necessarily have to be filed during the term, in order to be considered on appeal. I do not purpose entering the field of constitutional argument in defense of such act of the Legislature. It does not restrict any reserved right. It enlarges procedure in his behalf, and redounds to the benefit of the accused. It extends the time to his benefit, so he may secure a statement of facts, to the end that the issues of his case may be passed upon by the appellate court. This does not infringe, but enlarges his right. So, recognizances add another mode of appealing, and are not therefore restrictive, but enlarging and beneficial, to the accused. I wish to state here that the legislative body can not infringe, impair, or restrict constitutional guaranties, but may enlarge in aid of them. To the end there might be no cavil about this matter, section 29, article 1, Constitution, was ordained as follows: "To guard against transgression of the high powers herein delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void." So, the people, not only in ordaining the Constitution expressly reserved the right set forth in the first twenty-eight sections of article 1 from the powers of government, but emphasized them by adding section 29.

[NOTE.—Appellant's motion for rehearing, filed June 18, 1900, was overruled without a written opinion.—Reporter.]