Charles Ray DOYLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 59065.

Court of Criminal Appeals of Texas, Panel No. 2.

Nov. 19, 1980.

On Rehearing April 28, 1982.

Thomas P. Roebuck, Jr., Port Arthur, for appellant.

James S. McGrath, Dist. Atty. & John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for unlawful possession of a firearm by a felon. V.T.C.A. Penal Code, § 46.05. Punishment, enhanced by two prior felony convictions, is imprisonment for life.

Appellant challenges the State's proof of the two enhancement convictions. The sufficiency of the evidence to sustain the conviction is not challenged. In the interest of justice, however, we note fundamental error in the court's charge, and reverse appellant's conviction on that ground.

The indictment in this case alleged that appellant knowingly and intentionally possessed a firearm away from the premises where he lived, having previously been convicted of burglary, a felony offense involving an act of violence to property.

In applying the law to the facts, the court charged the members of the jury that they should convict appellant if they found that he:

> ... was a person who had been convicted of a felony involving violence to property, namely Burglary on February 10, 1969, in the Criminal District Court of Jefferson County Texas in cause # 27436, and who possessed a firearm away from the premises where he lived, ...

The charge failed to require the jury to find that appellant had a culpable mental state when he engaged in the conduct that constituted the offense. A culpable mental state is required to establish an offense under § 46.05, supra. *Tew v. State*, 551 S.W.2d 375 (Tex.Cr.App.1977); V.T.C.A. Penal Code, § 6.02. The failure to include an essential element of the offense in the charge applying the law to the facts is fundamental error. *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App.1978); *West v. State*, 567 S.W.2d 515 (Tex.Cr.App.1978). A required culpable mental state is an essential element of the offense and must be included in the charge. *West*, supra.[1] Appellant's conviction cannot stand.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The charge should be viewed as a whole and review should not be limited to parts of the charge standing alone. *Daniel v. State*, 486 S.W.2d 944 (Tex.Cr.App.1972); *Cain v. State*, 154 Tex.Cr.R. 284, 226 S.W.2d 640 (1950).

In *McCary v. State*, 477 S.W.2d 624 (Tex.Cr.App.1972), we were confronted with the contention that the following charge removed all "elements of scienter" from the jury's consideration:

" 'Now bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Forrest Edward McCary, Jr., did on or about the 27th day of November, 1968, as alleged in the indictment, in the County of Dallas and State of Texas unlawfully possess State's Exhibit No. 7, and that State's Exhibit No. 7 contained heroin, then you will find the defendant guilty as charged in the indictment and so say by your verdict, but if you do not so believe, or if

you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, "Not Guilty." ' "

Reading the charge as a whole, we failed to find reversible error.

In *Rivas v. State*, 496 S.W.2d 600 (Tex.Cr.App.1973), although the paragraph of the charge applying the facts to the law omitted the element of voluntariness, we affirmed the conviction because the definition of murder in the court's charge included that element.

In the instant case, the court's charge, in defining possession, limits voluntary possession to cases in which the possessor acts knowingly:

"Possession means actual care, custody, control or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."

The charge then proceeds to define knowingly.

We should hold that, considered as a whole, the charge adequately defined the issues and protected appellant's rights.

The judgment should be affirmed.

Before the court en banc.

OPINION ON STATE'S MOTION
FOR REHEARING

TEAGUE, Judge.

On original submission, a panel of the Court, with one judge dissenting with opinion, ruled that it was fundamental and reversible error for the trial court to have omitted from the application of the law to the facts paragraph of the charge to the jury the culpable mental state of either intentional or knowing.[1]

We granted the State's Motion for Rehearing to reconsider the panel's holding.

---

1. We note that the court also failed to include a culpable mental state in the abstract definition of the offense that was contained in the charge. Paradoxically, the court did define the terms "knowingly" and "intentionally."

1. There are four culpable mental states in our law, and they are classified according to relative degrees, from highest to lowest, as follows: intentional, knowing, reckless, and criminal negligence. See V.T.C.A. Penal Code, Sec. 6.02(d).

Although the definition of the offense of unlawful possession of a firearm by a felon,[2] which was the offense the appellant was charged with committing, does not by its definition prescribe a culpable mental state, nevertheless, one is required by the provisions of V.T.C.A. Penal Code, Sec. 6.02.[3] See also *Hazel v. State*, 534 S.W.2d 698 (Tex.Cr.App.1976); *Tew v. State*, 551 S.W.2d 375 (Tex.Cr.App.1977).

The State in this cause, in its charging instrument, alleged not one but two culpable mental states; intentionally and knowingly. However, the trial court did not include in its application of the law to the facts paragraph of the jury charge either of the culpable mental states.

The State argues that this is without significance because when the trial court "perfectly" defined in the abstract the word "possession," this eliminated the necessity of again setting forth a culpable mental state in the application of the law to the facts paragraph of the charge. It argues, as does the dissent, that this inference is mandated because of the general rule that the charge should be viewed as a whole. We disagree.[4]

■ It is axiomatic that when required elements of an offense are omitted from a charging instrument, such omissions will render a conviction fatally defective. See *Tew v. State*, supra; *Ex parte Roberts*, 522 S.W.2d 461 (Tex.Cr.App.1975).

2. See V.T.C.A. Penal Code, Sec. 46.05.

3. V.T.C.A. Penal Code, Sec. 6.02 provides in part:

(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility.

We believe that it logically follows that when a trial court omits from the application paragraph of the charge required elements of an offense, this also will render a conviction fatally defective. To rule otherwise, we believe, would permit and allow our trial courts to state in a jury charge abstract definitions of legal terms and principles of law, without the necessity of applying those principles and terms to the very facts of the case. We further believe that to uphold such a rule of law could lead to the destruction of our jury system. We decline to take the first step which could lead to the jury system's demise.

Abstract definitions of legal terms, words, and phrases in a jury charge are of extreme importance to a jury's understanding of the law of the case. However, standing alone, abstract definitions are like words found in a dictionary. They are useless until correctly used in a sentence. Recently, in *Bradley v. State*, 560 S.W.2d 650 (Tex.Cr.App.1978), the Court stated:

The Court's abstract instructions on the law—defining 'unlawful control,' 'effective consent,' 'deception' and 'deprive'— are not sufficient to remedy the deficiency in that portion of the charge which applies the law to the facts of the case. The State also is incorrect in asserting that the charge is proper because it requires the jury to find that the appellant's exercise of control over the proper-

\*     \*     \*     \*     \*     \*

4. The word "Possession" was defined abstractly as follows: "Possession means actual care, custody, control or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."

It would appear that by the definition of the word "possession," it would not necessarily follow that *any* possession would constitute a knowing act. The definition merely states that only certain types of possession are voluntary acts. In any event, we do not believe that the definition includes a "conscious objective or desire" by the defendant when he committed the act. See *Williams v. State*, 630 S.W.2d 640 (Tex.Cr.App.1982, En Banc).

ty was 'as set forth in the indictment,' and the indictment includes the element 'without the effective consent of the owner.' Were this the law, there would never be any need for a charge beyond requiring the jury to find that the defendant committed the offense as set forth in the indictment. See *United States v. Bosch*, 505 F.2d 78 (5th Cir. 1974); *People v. Lewis*, 112 Ill.App.2d 1, 250 N.E.2d 812 (1969). *Id.* at 652.

See also *Mendoza v. State*, 577 S.W.2d 240 (Tex.Cr.App.1978).

To understand our unique and historical system of trial by jury, it is crucial that one first understand that the trial judge and the jury each have certain independent responsibilities to perform. If the trial court fails to instruct a jury on the law, and on the law as applied to the facts, a jury cannot perform its function of being the exclusive judge of the facts. See Art. 36.-13, V.A.C.C.P.

We further believe that the Legislature of this State has commanded this Court, see Art. 36.19, V.A.C.C.P.,[5] which Court is the final arbiter of criminal appeals in this State, see Art. 5, Sec. 5, Texas Constitution, to review in all appeals to this Court the charge to a jury. In each case appealed to this Court, the above statute implicitly requires that we are to make the determination whether or not there is error of omission or commission in a jury charge, and if we find there is, we must then make the determination whether or not the error was calculated to injure the rights of the defendant, and also determine, if such error exists, whether or not it prevented the defendant from receiving a fair and impartial trial. Just as it is the sole responsibility of a trial judge, and no other, to prepare a proper and correct charge for a jury, it is this Court's legal duty not to let fundamental error in a charge go unnoticed. This has been the law in Texas for over 100 years.

See *Smith v. State*, 7 Tex.Ct.Rep. 382, 383 (1879).

As late as 1980, this Court stated in *Ex parte Clark*, 597 S.W.2d 760, 761 (Tex.Cr.App.1980).

\*　　\*　　\*　　\*　　\*　　\*

... We have held that the total failure of the court's charge to apply the law to the facts infringes two areas of the state and federal constitutions. First, it 'goes to the very basis of the cases' and denies 'the fair and impartial trial to which [defendants] are entitled under the federal and state Constitutions'; that is, under the due process provisions of the Fourteenth Amendment to the United States Constitution and the due course of law provision in Article 1, Section 19, of the Texas Constitution. *Harris v. State*, 522 S.W.2d 199, 202 (Tex.Cr.App.1975). Second, the failure of the charge to apply the law to the facts 'impairs the right to trial by jury and, therefore, by definition, is "calculated to injure the rights of defendant," [V.A.C.C.P., Article 36.19] to a trial by jury,' which rights are guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10, of the Texas Constitution. *Williams v. State*, 547 S.W.2d 18, 20 (Tex.Cr.App.1977).

\*　　\*　　\*　　\*　　\*　　\*

See also *Johnson v. State*, 99 Tex.Cr.R. 25, 267 S.W. 713 (1925).

When one considers the importance of a charge to a jury, it is oftentimes difficult to understand why our trial courts do not more carefully prepare it. E.g., *Ex parte Kimberlin*, 594 S.W.2d 438 (Tex.Cr.App. 1980); *Jones v. State*, 611 S.W.2d 87 (Tex. Cr.App.1981). Especially is this true when one considers that a reviewing court will always review the correctness of the application paragraph of the charge. *Grady v.*

---

5. Art. 36.19, V.A.C.C.P., provides:

Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appear-

ing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

*State,* 614 S.W.2d 830 (Tex.Cr.App.1981); *Jones v. State,* 576 S.W.2d 393 (Tex.Cr.App. 1979); *Grudzein v. State,* 493 S.W.2d 827 (Tex.Cr.App.1973). In *Harris v. State,* 522 S.W.2d 199 (Tex.Cr.App.1975), this Court held:

\* \* \* \* \* \*

It is also well established that the charge, rather than state mere abstract propositions of law and general statements of principles contained in the statutes, must clearly apply the law to the very facts in the case.... *Id.* at 202.

\* \* \* \* \* \*

The reason for this rule of law is that a jury must depend upon a trial court for an unbiased instruction of the law, as it may be applied to the facts of the case. *Williams v. State,* supra. Jurors should not be required and expected, *and they are not under our law,* to put together pieces of what may appear to them to be a jigsaw puzzle to determine which elements must be proved in order to find that the defendant committed the offense which he was charged with committing.

Nor should jurors, *and they are not under our law,* be required to second-guess the trial court by assuming it inadvertently omitted a required element of the offense, just because an abstract definition in the charge includes the omitted element. Frequently, an abstract definition may include alternative elements of the offense, which may not be those alleged in a charging instrument. It would truly be fundamental error if this Court were to permit a conviction to stand, if the error was based on these alternative elements and the jury had not been instructed by the trial court of their application to the facts of the case. E.g., *Cumbie v. State,* 578 S.W.2d 732 (Tex. Cr.App.1979). The definitional or abstract portion of the charge is nothing more than a dictionary for the jury to use in defining legal words and terms. But, like words found in a dictionary, the true and correct meaning of legal words and terms is not shown until they are properly used in a sentence, i.e., until they are applied. Compare, *Rubio v. State,* 607 S.W.2d 498 (Tex. Cr.App.1980).

If, however, we were to allow a jury to look to the abstract, or the definitional portion of the charge, to seek out and possibly find completely omitted elements of the offense, as opposed to explanations by the trial court of the law, and the law as applied to the facts, jurors would be able to convict a citizen of this State on alternative elements which were not stated in the charging instrument, thus depriving a defendant of a fair and impartial trial by jury which our Constitutional law mandates he shall receive. See Sixth Amendment, *United States Constitution*; Art. I, Sec. 10, *Texas Constitution.*

We believe that if we did not recognize the legal division of responsibilities which presently exist between the trial court and the jury, this could eventually result in commingling of those responsibilities, and eventually result in the demise of the jury system as it presently exists. The present division of legal responsibilities between the trial judge and the jury is the backbone of our jury system. Over 400 years ago, it was written: "For the office of 12 men is no more than to enquire to Matters of Fact and not to adjudge what the law is, for that is the Office of the Court and not of the jury." 1 Plowden 110a, 114a (K.B. 1554). We believe this is as it should be, but add to the statement the following: But in its instructions to the jury, the trial court must correctly apply the law to the facts of the case.

■ It is now axiomatic that an application of the law to the facts of the case, in the trial court's charge to the jury, which omits the culpable mental state alleged in the charging instrument, will render that charge fundamentally defective, and require reversal of the conviction by this Court, or an intermediate appellate court of this State, should the cause be appealed. See *Archie v. State,* 615 S.W.2d 762 (Tex.Cr. App.1981); *Ford v. State,* 615 S.W.2d 727 (Tex.Cr.App.1981); *Ferguson v. State,* 610 S.W.2d 468 (Tex.Cr.App.1979); *Faulk v. State,* 608 S.W.2d 625 (Tex.Cr.App.1980);

*Porter v. State*, 605 S.W.2d 553 (Tex.Cr. App.1979); *North v. State*, 598 S.W.2d 634 (Tex.Cr.App.1980); *Stidham v. State*, 590 S.W.2d 502 (Tex.Cr.App.1979); *Banks v. State*, 586 S.W.2d 518 (Tex.Cr.App.1979); *Holloway v. State*, 583 S.W.2d 376 (Tex.Cr. App.1979); *Mendoza v. State*, 577 S.W.2d 240 (Tex.Cr.App.1979); *Thompson v. State*, 574 S.W. 103 (Tex.Cr.App.1978); *West v. State*, 572 S.W.2d 712 (Tex.Cr.App.1978); *West v. State*, 567 S.W.2d 515 (Tex.Cr.App. 1978). This is true even though the trial court's charge to the jury properly includes therein the alleged culpable mental state in the abstract or definitional part of the charge. See *Faulk*, supra; *Porter*, supra.

■ Although the general rule is that a charge should be read as a whole, see Art. 36.19, *supra*, such general rule becomes applicable only when a reviewing court is judging the application of the law to the facts paragraph, and uses the charge as a whole to flesh out and explain the application paragraph. See *Simmons v. State*, 622 S.W.2d 111 (Tex.Cr.App.1981). The general rule is not applicable, however, when an entire element of the offense is omitted from the application paragraph. See *Robinson v. State*, supra.

■ Where there is a total or even a partial failure in the trial court's charge, of applying the law of the offense to the facts of the case, this type error of omission infringes upon an accused's federal and state constitutional rights to due process of law, due course of law, and the right of trial by jury. *Ex parte Clark*, supra. Such error has been held to be error calculated to injure the rights of a defendant because it prevents the defendant from receiving a fair and impartial trial by jury, to which he is entitled under our law. See Art. 36.19, *supra; Ex parte Clark*, supra; *Williams v. State*, supra; *Perez v. State*, 537 S.W.2d 455 (Tex.Cr.App.1976); *Harris v. State*, supra;

*Garza v. State*, 162 Tex.Cr.R. 655, 288 S.W.2d 785 (1956); *Rutherford v. State*, 15 Tex.App. 236 (Tex.Ct.App.1883). It is error of such dimension that it has been held that it may be raised for the first time in a post-conviction habeas corpus proceeding. See *Ex parte Clark*, supra; Cf. *Ex parte Coleman*, 599 S.W.2d 305 (Tex.Cr.App. 1979).

■ Art. 36.14, V.A.C.C.P.,[6] places the legal duty and responsibility on the trial judge to prepare for a jury a proper and correct charge on the law, and the law as may be applied to the facts adduced. This is a legal duty which must be performed by the trial judge. It may not be delegated to the attorneys for the respective parties, the court reporter of the court, or anyone else for that matter.

We believe that the charge to a jury represents the distilled and abstracted wisdom of many trials, appeals, and teachings of many great legal minds, both past and present, whose attention has been riveted on the subject of instructions to jury. The charge should resemble a gem that has been cut and polished by the hard edge of legal experience obtained from both within and without our criminal justice system. If a jury is given fundamentally defective and tainted instructions, in the application of the law to the facts paragraph, it truly has received a flawed jewel. However:

> A charge properly constructed will serve as an instrument to help the jurors cut through the confusing surface into the narrow area where the issues are clearly seen in their nakedness—their obscured simplicity. (Paraphrased, but taken from *Closing Argument: The Art and the Law*, Callaghan & Co., 1979 Edition).

---

6. Art. 36.14 provides in part as follows:

   Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, *the judge shall*, before the argument begins, *deliver to the jury*, except in pleas of guilty, where a jury has been waived, *a written charge dis-* *tinctly setting forth the law applicable to the case*; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. (Emphasis added.)

We now return to this cause, and will attempt to explain how some of the above principles are applicable to the cause at Bar.

Although the statutory definition of the offense for which appellant was charged with committing does not contain a necessary culpable mental state, see V.T.C.A. Penal Code, Sec. 46.05, nevertheless, as the statutory definition does not plainly dispense with any mental element, one is required by law. V.T.C.A. Penal Code, Sec. 6.02.

The allegation in appellant's indictment of the culpable mental states of intentionally and knowingly thus satisfied the fundamental principle of law that a charging instrument must allege all the essential elements of the offense sought to be charged.

However, it was still necessary, when the trial court instructed the jury in this cause, for the jury to be instructed in the terms of the charging instrument, i.e., of the law of the case as applied to the facts of the case. See *Rider v. State*, 567 S.W.2d 192 (Tex.Cr. App.1978); *North v. State*, 598 S.W.2d 634 (Tex.Cr.App.1980); *Holloway v. State*, 583 S.W.2d 376 (Tex.Cr.App.1979); *West v. State*, 572 S.W.2d 712 (Tex.Cr.App.1978); *Thompson v. State*, 574 S.W.2d 103 (Tex.Cr. App.1978); *Mendoza v. State*, 577 S.W.2d 240 (Tex.Cr.App.1970); *Bradley v. State*, 560 S.W.2d 650 (Tex.Cr.App.1978). See also Art. 36.14, V.A.C.C.P. E.g., *Rider*, supra; *Perez*, supra. The trial court in this cause did not do that.

█ We therefore conclude that the charge to the jury in this cause was fundamentally defective in two respects: The charge did not include therein either of the culpable mental states as were set out in the indictment. Furthermore, though the indictment alleged a culpable mental state, nowhere in the charge's application paragraph is there a reference to a culpable mental state. The charge is therefore fundamentally defective, which causes us to sustain the decision rendered by a panel of the Court.

The State's Motion for Rehearing is denied.[7]

ONION, P. J., and ROBERTS, DALLY and TOM G. DAVIS, JJ., concur in result.

CLINTON, Judge, concurring.

Without material deviation every code of criminal procedure enacted by the Legislature of the State of Texas has mandated, as Article 36.14, V.A.C.C.P. does now, that the judge of a trial court of record "shall ... deliver to the jury ... a written charge *distinctly setting forth the law applicable to the case*."[1] When the Supreme Court decided *Bishop v. The State*, 43 Tex. 390 (1875), cited by, and selective excerpts from it in *Mace v. State*, 9 Tex.App. 110 (Ct.App. 1880), reproduced by, the dissenting opinion in the case at bar, the contemporaneous code similarly imposed that duty on the trial judge. *Bishop v. The State*, supra, at 395.[2]

However, in common, both *Mace v. State* and the dissenting opinion seem not to appreciate the "general powers of revision and correction of errors" in this Court, as well as other appellate courts of this State. Particularly has the second segment of the authoritative opinion been overlooked—the

---

7. We find no need to discuss the dissenting opinion, for we observe that in several cases the author has explicitly made known his objections to the Court's now well established doctrine of fundamental error in a jury charge. For other expressions by the author of the dissenting opinion in this cause, concerning his views as expressed in his dissenting opinion in this cause, see *Wilson v. State*, 625 S.W.2d 331, 336 (Tex.Cr.App.1981); and *Mims v. State*, 612 S.W.2d 933, 934 (Tex.Cr.App.1981).

1. All emphasis is mine unless otherwise indicated.

2. Writing the lengthy opinion for the Supreme Court Chief Justice Roberts set out in full Article 3059, Paschal's Digest, the forerunner of Article 36.14, supra. In pertinent part it provided:

"After the argument of any criminal case has been concluded the judge shall deliver to the jury a written charge, in which he *shall dis-*

part in which then Chief Justice Oran M. Roberts [3] addressed those "general powers."

Having determined the situation when a bill of exceptions shows that an accused did object to some perceived deficiency in the charge of the trial court, the Supreme Court then took up a further matter, *viz*:

> "It is proper to notice another *error apparent upon the record* in order to prevent *any misconstruction of the rules that have been announced,* in connection with the rule by which this court is governed in its action, where there is a failure on the part of the court below to charge 'the law applicable to the case,' as required by the code, (Paschal's Dig., art. 3059,) and where it has neither been excepted to at the time of the trial, nor attempted to be remedied by asking a charge which was refused, nor made a ground for a new trial, all of which are expressly permitted to be done by the code. (Paschal's Dig., arts. 3061, 3067, 3068 and 3137.)" *Id.,* at 397–398.

Turning to the testimony surrounding the alleged theft, the Supreme Court noted that the charge of the court "did not explain to the jury what is meant in law by a fraudulent taking, necessary to constitute theft..." Finding the evidence tended to establish that which the charge had omitted, the Supreme Court concluded that "its omission appearing of record on appeal, *must be held to be a good ground of error* by this court, although the charge in this respect was not excepted to at the time of the trial nor objected to in the motion for a new trial," *id.,* at 398–399.

> *tinctly set forth the law applicable to the case ..."*

**3.** Chief Justice Roberts would soon serve two terms as Governor of Texas. Texas Almanac (50th Ed.) 529–530.

**4.** In the words of the Supreme Court, *The Republic v. Smith* case held that the constitutional grant of appellate jurisdiction "inherently conferred the right of appeal in criminal cases... and treated it as a remedy to revise the whole case upon the law and facts, as exhibited in the record..."

The Supreme Court explicated the bases for its conclusion in terms that still obtain today, albeit this Court now has that final appellate jurisdiction in criminal cases formerly held by the Supreme Court of Texas.

First, "This results from the general powers of revision and correction of errors given to the Supreme Court by the Constitution and laws of this State, in acting under the laws regulating proceedings in criminal trials." And the opinion points to constitutional provisions from the days of the Republic of Texas and the early decision in *The Republic v. Smith, Dallam,* 407,[4] as well as contemporaneous statutory authority and direction by Paschal's Digest, Article 3210(744) [5] and Article 3208(742).[6]

Secondly, after accepting the general meaning of "to revise the judgment," the *Bishop* Court explained:

> "... The fact that a defendant may except to a charge, when given, by pointing it out definitely, specifying his objections, and that he may so object to any part of the charge on a motion for a new trial, to both of which the law has attached certain consequences, *does not,* by any fair implication, *debar him from making the same objections for the first time in this court that might then have been made*; and there certainly is no express prohibition of its being done. The duty of the district judge is none the less imperative to deliver a charge 'in which he shall distinctly set forth the law applicable to the case' under article 3059, when not excepted to at the time of trial in a felony case, although its infraction may invoke a different rule in revising the case on appeal, than that prescribed in

**5.** "The Supreme Court may revise the judgment in a criminal action, as well upon the law as upon the facts; ..." Compare Article 44.25, V.A.C.C.P.

**6.** "The judgment in a criminal action upon appeal may be wholly reversed and dismissed when brought up by the defendant; ... the judgment may be reformed and corrected, or the cause may be remanded for further proceedings ... as the law and the nature of the case may require." Compare Article 44.24(b), V.A.C.C.P.

article 3067, when it is excepted to at the time of the trial." [7] *Id.*, at 401.

Thirdly, moving to the situation where an accused failed to except, the Supreme Court *then* wrote the paragraph that the dissent reproduces by quoting from the opinion of the Court of Appeals in *Mace v. State*, supra.[8] (P. 748) After further explication of the rule and again indicating relevant testimony, the Supreme Court found that "the omission of some such charge was a material error, calculated to injure the rights of the defendant, by leaving the jury to decide the law as well as the facts of the case," *id.*, at 403. A host of Supreme Court precedents was added to show that its conclusion "is in accordance with the uniform decisions of this court, in the exercise of its powers as an appellate tribunal," and their impact capsuled, *viz*:

"In none of the cases just cited, some of which are leading cases, do the reports of them show, nor does it appear in the opinions therein delivered, that there was an objection made to the charge, for misdirection or deficiency, either in exceptions at the time of the trial or in the grounds of a motion for a new trial, nor is there the least intimation in them, or that has been found elsewhere in our reports, that it was necessary to raise such objection below, as to the misdirection or deficiency of a charge, as prerequisite appearing on the record to enable this court to revise such action of the court in relations to the charge. This is ample evidence of the construction of the powers of this court in appeals, and of the

rules under which it has uniformly acted, as above stated, and as shown by reference to the cases cited." *Id.*, at 403.

Accordingly, bringing together that error in the charge to which exception had been leveled—addressed in the first part of the *Bishop* opinion from which the *Mace* Court drew support—and the "apparent error" pointed out in the second segment of its opinion, the court finally concluded:

"On both grounds of error, in charging substantially on the weight of evidence excepted to at the time of the trial, and for the material deficiency in the charge, not objected to below, but apparent on the record, and deemed to be an error calculated to injure the rights of the defendant, the judgment is reversed and the cause remanded." *Id.*, at 403–404.

Thus did the Supreme Court of Texas assert and confirm its plenary powers to review all proceedings made a part of the record in criminal cases and to revise a judgment of the trial court. That it chose to draw from extant statutory provisions its guides for determining what within or omitted from the charge of the trial court "would be a material error, justifying and requiring a reversal on appeal," *id.*, at 402, did not mean that such constitutional powers of review of defective charges and concomitant revision of judgment of conviction were necessarily so limited and restricted.

The matter thus stood until after adoption of the 1895 code when the principles of *Bishop* and *Tuller v. State*, 8 Tex. App. 501 (Ct.App.1880) were embraced in an amendment to then Article 723 by Acts

---

7. Article 3067, a more demanding direction than present Article 36.19, V.A.C.C.P., *required* a reversal of the judgment when "the district judge has departed from any of the requirements of the eight preceding articles ... provided it appears by the record that the defendant excepted ... at the time of the trial."

8. For purposes of continuity the quoted paragraph from *Bishop*, supra, at 401–402, is here reiterated:

"In this court, on appeal, as well as in the District Court, on a motion for new trial, *a material misdirection of the law as applicable to the case*, calculated to mislead the jury, would be error, justifying and requiring a

reversal; and a failure to give a charge to the jury the law which was required by the evidence in the case, and which failure was to the extent to be calculated to injure the rights of the defendant, would be a material error, justifying and requiring a reversal on appeal. (Paschal's Dig., art. 3137; see, for recent cases, 40 Tex. 15, 43, 203, 527.)" The cited Article 3137, it should be noted, provided among other grounds for a new trial, "Where the court has misdirected the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant." Compare Article 40.03(2), V.A.C. C.P.

1897, 25th Leg., ch. 21, p. 17; see Gammell's Laws of Texas 1071.[9] With this development on the legislative front, I respectfully suggest that what the dissenting opinion views as "well-settled" judicially by 1886[10] was, predictably, destined to become unsettled.

Apparently the first consideration given to the 1897 revision was in *Pena v. State,* 38 Tex.Cr.R. 333, 42 S.W. 991 (1897).[11] Judge W. L. Davidson wrote for the Court:

"... Under the recent act of the legislature [Acts 25th Leg., p. 17], this court is prohibited from reversing a judgment for material error of the court in regard to charging the law, unless 'the error shall be excepted to at the time of the trial or on motion for new trial'."

That notion was casually accepted for the next two and a half years in, e.g., *Darter v. State,* 39 Tex.Cr.R. 40, 44 S.W. 850 (1898); *Bailey v. State,* 45 S.W. 708 (Tex.Cr.App. 1898); *English v. State,* 45 S.W. 713 (Tex. Cr.App.1898); *Stewart v. State,* 50 S.W. 459 (Tex.Cr.App.1899);[12] *Ford v. State,* 41 Tex. Cr.R. 1, 51 S.W. 935, 937–938 (1899); *Reid*

*v. State,* 57 S.W. 662, 664 (Tex.Cr.App.1900) —until June 6, 1900, and *Johnson v. State,* 42 Tex.Cr.R. 87, 58 S.W. 60 (1900) and *Johnson v. State,* 42 Tex.Cr.R. 103, 58 S.W. 69 (1900).

The constitutionality of Article 723, as amended in 1897, was assailed. Writing for a majority of the Court, Judge Brooks posed the issue and preliminarily resolved it:

"... We think said article is constitutional, and unless appellants complain of the charge below, and reserved that complaint in a bill of exception or in motion for new trial, then such error cannot be reviewed in this court, *however erroneous or fundamental it may be.*"[13]

For his part, however, Presiding Judge Davidson dissented, insisting that the statute did not intend to encompass fundamental error,[14] and presented *in extenso* reasons why he found the majority interpretation of Article 723 to render the same "unconstitutional, and therefore void."[15]

The second *Johnson* case, see supra, produced three opinions on the same constitu-

9. Former articles, including Article 3067, Paschal's Digest, see *Bishop,* at 395, required that the judgment *be* reversed when the judge "departed from" any of the other requisites of the charge, if excepted to at the time of trial. The 1897 enactment completely revised the concept: The judgment was *not* to be reversed for failure to comply with the preceding requirements unless raised by bill of exception or in motion for new trial, and the error was calculated to injure the rights of the accused.

10. All cases cited and discussed in the dissenting opinion in this respect predate the 1897 legislative embrace of their principles.

11. The Court consisted of Presiding Judge Hurt and Judges Davidson and Henderson.

12. Judge Davidson had been elected Presiding Judge, and M. M. Brooks was elected Judge, both beginning January 2, 1899.

13. Going on to develop reasons for thus opining, Judge Brooks first noted that "until of late" it had never been "successfully controverted and never really seriously denied" that the Legislature is amply authorized "to pass any law regulating the means, manner, and mode of assertion of any of appellant's rights in the court," adding that "so long as this means, manner, and mode be adequate for the assertion of either statutory or constitutional right,

just so long are the statutes and remedies provided by law constitutional." *Id.,* 58 S.W. at 61. He then proceeded to elucidate that thesis.

14. "It has no reference to the settled law in this state, wherein judgments were reversed when the error was of a fundamental nature, or which impinged upon those rights guarantied the accused, of a fair 'trial by an impartial jury,' due process of law, etc." *Id.,* 58 S.W. at 66.

15. The essence of his legal theories is expressed *id.,* 58 S.W. at 67:

"... If Article 723, supra, undertakes to limit this court in its authority to honestly, correctly, justly or legally decide cases, it is unconstitutional, and therefore void; or, if it undertakes to dictate when the court shall reverse or affirm cases, it is equally unconstitutional; or, if it undertakes to inhibit the court from deciding an appeal according to constitutional requirements, it would be a plain infraction of those sections of the constitution pointed out."

Presiding Judge Davidson had alluded to Article II, Sec. 1, separation of powers; Article I, Sec. 10, speedy public trial by impartial jury; Article I, Sec. 15, inviolate right to trial by jury; and Article I, Sec. 19, due course of law.

tional argument. Judge Henderson now wrote the opinion of the Court interpreting and upholding against constitutional attack on Article 723,[16] supra; Judge Brooks specially concurred to disassociate himself from an implication in the opinion of the Court;[17] Presiding Judge Davidson dissented, incorporating his views expressed in the first *Johnson* case, and adding a rebuttal.[18]

Together, then, the *Johnson* opinions reveal at the turn of the century a great deal of dispute over what was or should be the "well-settled" law on the matter in question.

The argument continued in *Barnett v. State*, 42 Tex.Cr.R. 302, 62 S.W. 765 (1900) and *Manning v. State*, 46 Tex.Cr.R. 326, 81 S.W. 957 (1904), and it appears the bar at least did not regard the issue closed. See *Sue v. State*, 52 Tex.Cr.R. 122, 105 S.W. 804, 809[19] (1907). Then W. F. Ramsey was appointed to take the seat of the late Judge Henderson who died December 22, 1907,

and the Court began to take a different approach to Article 723.

Thus, near the end of the next decade Judge Ramsey, writing for the Court in *Jones v. State*, 53 Tex.Cr.R. 131, 110 S.W. 741 (1908) characterized the 1897 revision as "in the nature of remedial legislation," designed to preclude a reversal for "*mere matters of form*, where there had been no invasion of any substantial right of a defendant . . ." and to prevent reversals for "*mere technicalities*," *id.*, 110 S.W. at 744–745. Contemporaneously, in *Williams v. State*, 53 Tex.Cr.R. 2, 108 S.W. 371 (1908) without pointing to any exception or motion for new trial, Presiding Judge Davidson found and held:

"... The court's charge authorized a conviction for an offense not charged, to wit, a burglary with intent to commit a felony. Under the following authorities we are of the opinion that this error was of such moment as requires a reversal of the judgment. [Citations omitted.]"[20]

16. "... The language of this amendment is clear and unequivocal, and construes itself. If, however, it was a matter of judicial interpretation, evidently the legislature intended to cut off the evil of frequent reversals when no exception had been taken to the action of the lower court. The legislature did not undertake to deny appellant any right to which he was entitled under the law, but merely to regulate that right by enacting a reasonable course of procedure, requiring a defendant to try his case according to certain rules of law in the lower court, and, if he was aggrieved, to take his bill of exceptions, in order that the court below might be afforded an opportunity to cure the wrong, and thus prevent delay in the trial and disposition of cases. Under all the authorities, it was competent for the legislature to do this. *March v. State*, 44 Tex. 64, 1 Bish.Cr.Proc. § 115; Cooley, Const.Lim. 327." *Id.*, 58 S.W. at 70.

17. "I concur in the conclusion reached. But I do not concur in so far as the opinion herein asserts the proposition that the legislature can deprive defendant of the right of appeal to this court altogether, and that there is no constitutional inhibition. I do not think the legislature, by sheer force of the fact that it has power to provide adequate remedy for the assertion of legal rights, can go further, and deprive defendant of all right of appeal to this court, thereby destroying this court. I therefore do not agree to any proposition in this opinion asserting this as a fact." *Id.*, 58 S.W. at 71.

18. "... That the legislature may regulate such appeals so as to carry out fairly the right of appeal does not authorize that body to prohibit this right. The fact that it can be regulated necessarily recognizes the right of appeal. If there is no such right, this court is unnecessary." *Id.*, 58 S.W. at 71.

19. "We wish here to again repeat what we have frequently said, that it is useless consumption of paper and an unnecessary incumbrance of the record to put an assignment of errors in the record sent to this court. Article 723 of the Code of Criminal Procedure of 1895 limits our consideration to assignments in the motion for a new trial and to bills of exceptions. We cannot take cognizance of any assignment of errors that is not thus placed in the record. Therefore, we again urge the bar of Texas, not to incumber the records sent to this court with any more assignments of errors. No complaint of the charge of the court, or ruling of the court can be considered by us, unless said complaint is embodied either in a motion for a new trial or in a bill of exceptions."

20. The nine authorities are cases decided by the Court of Criminal Appeals, the former Court of Appeals and the Supreme Court of Texas. Granted most of them reflect an exception or motion for new trial, but some do not, e.g., *Weeks v. State*, 13 Tex.App. 466 (Ct.App. 1883): "The charge of the court being radically

By the end of the second decade the point that Article 723 of the 1895 criminal procedure, as amended in 1897, and its successors did not vitiate the doctrine of fundamental error in a charge of the court was made and reiterated in, e.g., *Grant v. State*, 59 Tex. Cr.R. 123, 127 S.W. 173 (1910); *Wright v. State*, 73 Tex.Cr.R. 178, 163 S.W. 976 (1914); [21] *Moore v. State*, 84 Tex.Cr.R. 256, 206 S.W. 683 (1918)—each of which is excerpted and discussed in *Wilson v. State*, supra, at 334–335. The fundamental error doctrine continued to be recognized and applied by generation after generation: in *Menefee v. State*, 129 Tex.Cr.R. 375, 87 S.W.2d 478, 481 (1935); the *Gooden* cases [*Gooden v. State*, 140 Tex.Cr.R. 351, 145 S.W.2d 179 (1940)] supra, in the forties; by Judge Woodley, for the Court, in *Garza v. State*, 162 Tex.Cr.R. 655, 288 S.W.2d 785 (1956).[22]

Many more recent decisions honoring the fundamental error doctrine as it applies to the charge of the court could be cited, and some are in *Sattiewhite v. State*, 600 S.W.2d 277, 283–284 (Tex.Cr.App.1980) (Opinion on Motion for Rehearing). But

enough has been shown to dispute the contention that the Court is reversing this judgment on a basis "of recent vintage"— indeed, demonstrating that the judicial power and authority to do so began with the Republic.

Accordingly, with these additional observations and since it is clear that the charge of the court failed to apply the law of a culpable mental state to the facts,[23] I join the opinion of the Court.

ODOM, J., joins.

McCORMICK, Judge, dissenting.

The majority errs in reversing this case and in failing to overrule the per se rule of fundamental error allegedly announced in *Harris v. State*, 522 S.W.2d 199 (Tex.Cr. App.1975), and followed so unquestioningly since *Williams v. State*, 547 S.W.2d 18 (Tex. Cr.App.1977). *Harris*, and the cases cited therein, graphically illustrate that the case at bar is not in fact controlled by an "age old principle of law" as the majority asserts, but instead is being reversed on the basis of

defective, the judgment is reversed..." See also *Hobbs v. State*, 44 Tex. 353 (1875). Nevertheless, as I have demonstrated in my concurring opinion in *Wilson v. State*, 625 S.W.2d 311, 334 (Tex.Cr.App.1981), thirty two years later in the *Gooden* cases [*Gooden v. State*, 140 Tex. Cr.R. 351, 145 S.W.2d 177 (1940)] the "exact same error" appearing in the charges was held to be "fundamental error."

21. By now two new members of the Court served with Judge Davidson: Presiding Judge A. C. Prendergast and Judge A. J. Harper. The opinion in *Wright* takes note of still another amendment to what had become Article 743, C.C.P. 1911—"or on motion for a new trial" was deleted—finds its effect was to require a contemporaneous exception to claimed charge error and concludes "consequently we are without authority to review the charge of the court unless complained of at the time of trial, *unless fundamental error is presented.*" Perhaps satisfied with the ultimate qualifying clause, Judge Davidson did not dissent. For other instances in which he did not, see *Williamson v. State*, 74 Tex.Cr.R. 289, 167 S.W. 360, 362–363 (1914); *Crossett v. State*, 74 Tex. Cr.R. 440, 168 S.W. 548, 552 (1914); *Grider v. State*, 82 Tex.Cr.R. 124, 198 S.W. 579, 580 (1917); *Lowe v. State*, 83 Tex.Cr.R. 134, 201 S.W. 986, 988 (1918). It is clear none of those opinions was seen as discarding the fundamen-

tal error doctrine; see *Sweeney v. State*, 84 Tex.Cr.R. 58, 205 S.W. 335, 338 (1918) (Prendergast, J., dissenting).

22. Without objection the trial court authorized a jury to find an accused guilty of possessing beer in a dry area for purpose of sale should it determine that he possessed "more than 24 bottles ... for the purpose of sale;" the Court concluded that "the error in the charge is of a fundamental nature and requires that the conviction be set aside."

23. The principle stated in *Sattiewhite*, supra, at 285, is not satisfied with respect to the essential element of a culpable mental state; it is:

"... *If not otherwise faulty*, a charge of the court that requires the jury to find each essential element of the offense charged and comports with the legal theory presented by the State though evidence that proves every factual allegation made in the charging instrument is not fundamentally defective...." [Emphasis in original]

*West v. State*, 567 S.W.2d 515 (Tex.Cr.App. 1978) squarely holds that failure of the charge to require the jury to find, as an element of the offense, either culpable mental state alleged in the indictment constitutes fundamental error.

an ill-founded distortion of that "age old principle" that is of recent vintage.

In *Harris v. State,* supra, the Court held that the charge was fundamentally defective for failing to apply the law (which the Court noted was adequately explained) to the facts and issues in evidence. As the Court also noted:

"This Court has consistently held that where no objection is made to the court's charge in accordance with Article 36.14, V.A.C.C.P., a judgment will not be reversed on appeal because of error in the charge unless it appears that he has not had a fair and impartial trial." 522 S.W.2d at 201.

The charge in *Harris* was as follows:
"MEMBERS OF THE JURY:

"The defendant, Arthur Franklyn (sic) Harris, stands charged by indictment with the offense of rape by force and threats, alleged to have been committed in Dallas County, Texas on or about the 10th day of November 1973.

"To this charge the defendant has pleaded not guilty. 'Rape' is the carnal knowledge of a woman without her consent, obtained by force or threats or both.

" 'Carnal knowledge' is the penetration of the private female organ of the alleged female by the private male organ of the accused person. The slightest penetration of the female sexual organ by the male sexual organ is sufficient to constitute penetration and it need not be to any particular depth.

"To constitute 'rape by force,' the accused must have ravished the alleged female by having carnal knowledge of her without her consent and against her will by means of force. The force must have been such as might reasonably be sufficient to overcome any resistance, taking into consideration the relative strength of the parties and other circumstances of the case.

"To constitute 'rape by threats,' it must appear that the party charged assaulted the alleged female and by means of threats ravished and had carnal knowledge of her without her consent and against her will. The 'threats' must be such as might reasonably create fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength, and all other circumstances of the case.

"Further, before there can be rape, penetration of the sexual organ of the female alleged to have been ravished by the male organ of the party accused must be proved beyond a reasonable doubt.
"(*)

"You are further instructed that the law allows the defendant to testify in his own behalf, but a failure on his part to do so is not a circumstance against him and no presumption of guilt can be indulged in by the jury for a failure on his part to do so. I instruct you in this case not to refer to or discuss such failure on the part of the defendant to testify during your consideration of this case.

"You are limited in your deliberation as jurors on the verdict of guilt or innocence only. You are to consider and discuss only the facts and circumstances as were admitted into evidence. You should not consider nor discuss facts and circumstances that are not in evidence, and in this connection, you are instructed that no juror may lawfully relate any fact or circumstance of which he or she may claim to have personal knowledge which has not been admitted into evidence before you. If any evidence has been withdrawn from the jury by the Court, you will not discuss or consider it for any purpose.

"You will make no finding in your verdict except to show whether the defendant is guilty, beyond a reasonable doubt, or not guilty, as you may find and determine from the law and evidence in this case.

"Now, if you find and believe from the evidence or have a reasonable doubt thereof that at the time of the commission of the offense, if any, the defendant was at his Aunt's house, Gracy Branch, on Harwood, then you will acquit the defendant and say by your verdict 'not guilty.'

"You are further instructed that an indictment is no evidence of guilt. Therefore, you are instructed in this case that the indictment herein shall not be considered by the jury as any evidence of guilty, if any.

"In all criminal cases the burden of proof is on the State. The defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt and in case you have a reasonable doubt as to the defendant's guilt, you will acquit the defendant and say by your verdict 'not guilty.'

"You are further instructed that your verdict must be unanimous and shall be arrived at by due deliberation and not by a majority vote, nor by any method of chance.

"You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony, but you are bound to receive the law from the Court, which is herein given you and be governed thereby."

*Harris v. State*, at 200–201, fn. 1.

It is obvious that nowhere did the court, after charging on the law, apply the law to the facts and require the jury to find the same beyond a reasonable doubt. That paragraph, which would normally appear where the asterisk (*) appears, was completely omitted from the court's charge, leaving the charge without an "application" paragraph. The net effect of such a charge was to give to the jury nothing more than abstract propositions of law without ever "instructing" them as to their duties.

The effect of *Harris* was to adopt a "per se" rule that failure of the charge to apply the law to the facts was fundamental error, thereby presuming appellant did not receive a fair and impartial trial. The Court in *Harris* relied primarily on two cases to reach its conclusions. The first, *Ross v. State*, 487 S.W.2d 744 (Tex.Cr.App.1972), does not support the Court's holding in *Harris*. In *Ross*, the court's instructions authorized the jury to convict the defendant of

an offense separate and distinct from the one charged in the indictment. But, that is not the situation that existed in *Harris*.

The second case is *Fennell v. State*, 424 S.W.2d 631 (Tex.Cr.App.1968). On original submission in *Fennell*, the Court found that the evidence established self-defense as a matter of law. On rehearing, the Court reversed its original holding relating to the establishment of self-defense as a matter of law, but concluded that the evidence of self-defense was so strong that the defendant was clearly harmed by the failure of the charge to apply the law of self-defense to the facts. In passing, the Court noted:

"We are reinforced in our opinion by virtue of the trial court's refusal to respond to appellant's timely presented special requested charge to the effect that the intoxication or drinking of the deceased would not excuse his attack upon appellant or take from the appellant his right of self-defense.

"*It may not have been reversible error to have refused such a charge* had the appellant been given an adequate, comprehensive, complete and unrestricted instruction on self-defense, but that, of course was not done as observed earlier. [Citations omitted] The court's charge as a whole did not fairly and adequately protect the rights of the appellant." [1]

Although the original opinion in *Fennell*, which was withdrawn, had reversed on "fundamental error", the ultimate holding on rehearing does not reach that conclusion.

*Fennell*, like *Ross*, does not stand for the proposition that failure to apply the law to the facts is, per se, reversible. The Court in *Fennell* was very careful to explain its reasons for concluding the defendant had not received a fair and impartial trial. In other words, the Court in *Fennell* examined the facts of the case, other errors in the trial court's failure to give requested charges, and the sufficiency of the evidence before concluding that the defendant was harmed. Unfortunately, in adopting the "per se" rule of *Harris*, this Court no longer looks to

1. All emphasis is the writer's unless otherwise    noted.

the facts of the case nor requires a showing of harm. This is clearly contrary to over 100 years of sound legal precedent.

But, an examination of *Harris* should not stop here. Not only did the decision rely on a misinterpretation of those cases previously discussed, there is a total failure to recognize the caselaw which existed at the time of the *Harris* decision.

In *The Charge In Criminal Cases*, Jim D. Bowmer, Luther E. Jones, Jr., and John H. Miller, 12 Baylor L.Rev. 261, the authors discuss the rationale and methods of submission of the general charge in criminal cases. The following language from that article is pertinent to the present inquiry:

"The usual method if imparting this information to the jury is to apply the law to the ultimate facts constituting the theory being submitted, i.e. to include instructions setting forth a hypothetical statement showing what verdict or other consequence is required by law if the jury find such facts have been sufficiently proved.

"The trial court is bound to follow this method .of issue submission if there be proper objection to an omission to follow it. But this method, in the absence of objection, is not exclusive. Thus, where the accused does not complain, a submission of the issues of a particular theory may be accomplished merely by the giving to the jury of abstract law applicable to such issues.[62]

---

[62]*Parnell v. State*, 166 Tex.Cr.R. 239, 312 S.W.2d 506 (1958) (The charge authorized conviction on the jury's finding that defendant did the acts constituting the offense of abortion charged in the indictment. But the proof *conclusively* showed that defendant did not personally do such acts and therefore could be guilty, if at all, only on a theory that he acted with another as a principal. Abstract instructions setting forth the substantive law of principals applicable to such theory were given to the jury but nowhere did the charge set forth instructions applying this law to the ultimate facts essential to the establishment of such theory. Defendant made no complaint of this omission. On appeal, the conviction was affirmed without mention, in the majority opinion, of the omission of the charge to apply the law to such ultimate facts. The necessary effect of this decision is to hold that abstract instructions as to substantive law applicable to a prosecution theory relied on by the State for conviction will be deemed sufficient to submit to the jury the issues of such theory if the defendant makes no complaint. This holding allowed the jury to perform, and necessarily presumed that the jury did properly perform, the judicial function of determining, from an interpretation of abstract instructions, what ultimate facts would have to be found to establish the State's case.); *McCoy v. State*, 138 Tex.Cr.R. 138, 134 S.W.2d 273, 276 (Tex.Crim. 1939) ('While a charge should apply the law to the facts of the particular case, yet in the absence of an objection addressed thereto prior to the time the same is submitted to the jury, the presumption obtains that appellant was satisfied with the instruction.').") (Emphasis supplied in original writing)

The above illustrates clearly how this Court deviated from the established principles of law in adopting the per se rule of *Harris*. The true "age old principle of law" is easily deciphered by examining the earliest cases on the subject. In 1886, the Court of Appeals in *Leache v. State*, 22 Tex.App. 279, 3 S.W. 539, noted:

"It is a well-settled rule that a charge of the court, when first questioned as to its correctness in the motion for new trial, will not be revised on appeal unless, *when reviewed in the light of the circumstances*, it was calculated to prejudice the rights of the accused." 3 S.W. at 546.

This same language can be found in the earliest cases reported in this State. See *Bishop v. State*, 43 Tex. 390 (Tex.Cr.App. 1875); *Robinson v. State*, 24 Tex. 152 (Tex. Cr.App.1859); and *Tuller v. State*, 8 Tex. App. 501 (Tex.Cr.App.1880).

In *Tuller*, the Court said: "The principle so ably and thoroughly elucidated in the case just cited [*Bishop v. State*, supra] has been uniformly followed since, and constitutes an established principle in criminal procedure in this State."

Again, in 1880, the Court of Appeals, addressed the issue before us. In *Mace v. State*, 9 Tex.App. 110, the defendant was charged with burglary in the nighttime. The court's instructions authorized the jury to convict for either daytime or nighttime burglary, separate offenses under the then-existing law. In affirming the conviction,

the Court noted that such was clearly error but not of such character as to invalidate the judgment:

"On appeal, an erroneous charge occupies a very different attitude, where it has been promptly and properly excepted to on the trial, from that of one not so excepted to. Our statutes contemplate and it is beyond doubt the proper practice, to reserve exceptions by bill to an erroneous charge at the time it is given. Code Cr.Proc., arts. 685, 686. If such exceptions are reserved, then it is the duty of this court to reverse the case for the error, without further inquiry as to the effect it may have had upon the result of the trial. But when no bill of exceptions is reserved, and it is attempted to take advantage of the error for the first time in the motion for new trial, upon appeal, then it is not a matter of course that the error should prevail in effecting a new trial, or that in this court it should even necessarily be revised, much less require a reversal of the case. As was said by Roberts, C. J., in *Bishop v. The State*: 'If such a charge is not excepted to at the time of trial, but presented in a motion for a new trial, which is the next point at which it could be presented, then its consideration by this court would be subject to another and a very different rule, which would be whether or not such charge was an error which, under all the circumstances as exhibited in the record, was "calculated to injure the rights of the defendant," and which is prescribed as one of the grounds for the granting of a motion for a new trial, in the following language: "Where the court has misdirected the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant." Pasc.Dig., art. 3137 (Rev.Code Cr.Proc., art. 777); 23 Texas, 221, 231; 24 Texas, 154, 398, 399; 28 Texas, 495, 496. This difference in the rule, dependent upon the time when the objection to the action of the court is made, is in harmony with the rules of judicial proceedings generally, that a party who makes his objection at the proper time, which is usually the first practical opportunity, shall have his objection more favorably considered than if it had been inopportunely delayed.' But again he says: 'In this court on appeal, as well as in the District Court on a motion for a new trial, a material misdirection of the law as applicable to the case, calculated to mislead the jury, would be error justifying and requiring a reversal; and a failure to give in charge to the jury the law which was required by the evidence in the case, and which failure was to the extent to be calculated to injure the rights of the defendant, would be a material error, justifying and requiring a reversal on appeal.' Pasc.Dig., art. 3137; 40 Texas, 15, 203, 527; *Bishop v. The State*, 43 Texas, 390; *Tuller v. The State*, 8 Texas Ct.App. 501.

"Now, in the case we are considering, the burglary was charged to have been committed in the night-time; the evidence established conclusively, and without conflict, that it was committed in the night-time; and the court sufficiently charged the law applicable to the offence as alleged and proven. As before remarked, the instruction complained of with regard to the offence, if committed in the daytime, had and could have had no pertinency to the case being tried, and it is not well perceived how it could have injuriously affected the rights of the defendant."

The rule that was well-settled in 1886 remained in force until the opinion in *Harris*, but was, after over 100 years, abandoned for a per se rule that ignores the statutes as well as the caselaw.

Judge Clinton in his concurring opinion misses the point of my dissent. His opinion dwells on the idea that I am saying the doctrine of fundamental error in Texas jurisprudence is a new development. I am not saying that at all. I am saying that, throughout the history of Texas jurisprudence until *Harris*, the presence of fundamental error in a jury charge did not *per se* mean a reversal of the conviction. Rather, a conviction was reversed upon the presence

of fundamental error only if there was a showing that the appellant was harmed by the charge.

The concurring opinion is correct in stating that the law in Texas has been that the written jury charge should distinctly set forth the law applicable to the case. And, it is also true that the Court prior to 1897 would review jury charges which were not applicable to the facts, whether excepted to or not. However, in situations where there had been no exception, reversals would not occur unless it was shown that the failure to apply the law to the facts was injurious to the appellant. See *Bishop v. State*, supra; *Mace v. State*, supra. This is amply illustrated in *Tuller v. State*, supra. Tuller was charged with burning down houses belonging to Emil Reaume. At trial, some question developed as to whether Emil Reaume actually owned the houses or whether they were still owned by a Mrs. Lloyd and Mrs. Tuller, with whom Emil Reaume had contracted to buy the houses. In dealing with this question, the judge charged the jury that even if they believed the houses were the property of Mrs. Lloyd and Mrs. Tuller, and if they believed Mrs. Lloyd and Mrs. Tuller had authorized the appellant to burn the houses, and if they believed that at the time of the fires there was property in the houses belonging to another person, they should convict. This portion of the charge was not excepted to at trial but was brought up in the motion for new trial. The Court, in considering the defendant's contention, noted that the charge was not applicable to the facts of the case. However, the Court went on to note that since the error was being presented for the first time in the motion for new trial, an inquiry had to be made whether, in view of all the evidence and the whole case, it was of such a material character as to require a reversal of the judgment.

"The particular portion of the charge complained of, though inapplicable to the case, could not have misled the jury or injured the rights of the defendant. The possession and occupancy of the premises by Reaume at the time of their destruction were not controverted, and, under the evidence, either for the State or the defense, the jury could not have found otherwise. . . . Under the facts, the law and the charge of the court, it was impossible for the jury to have found the ownership in any other person than the alleged, and the error complained of was therefore harmless." *Tuller v. State*, 8 Tex.App. 501 (Ct.App.1880), at 508, 509.

After the amendment of Article 723 by Acts 1897, 25th Leg., ch. 21, p. 17, Article 723 read as follows:

"Whenever it appears by the record in any criminal action, upon appeal of defendant, that any of the requirements of the eight preceding articles (rules regarding the contents of jury charges) have been disregarded, *the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant*, which error shall be excepted to at the time of trial or on motion for new trial." (Material in parenthesis added and emphasis added).

Once again, it is clear that judgments were not to be reversed because of error in the jury charge unless the error was calculated to injure the rights of the defendant. This is clearly demonstrated by the cases cited in the concurring opinion. In *Stewart v. State*, 50 S.W. 459 (Tex.Cr.App.1899), the Court examined the court's charge even though the appellant had not properly excepted as required by Article 723. Finding no error calculated to injure the appellant, Stewart's judgment was affirmed. In *Ford v. State*, 41 Tex.Cr.R. 1, 51 S.W. 935 (1899), Ford was charged with robbery. On appeal Ford complained that the trial court erred in giving a charge which directed the jury to acquit him if they believed he had acquired the property by purchase or gift. Ford contended this was error since there was no evidence that he or his co-defendants acquired the property by gift. In its opinion, the Court agreed that the trial court erred in giving the instruction however: "We do not think it was such error as was calculated to injure the rights of appellant. . . . We do not see fit to reverse the judgment on this account." *Ford v. State*,

51 S.W. at 937. In *Reid v. State,* 57 S.W. 662 (Tex.Cr.App.1900), Reid complained on appeal that there was fundamental error in the jury charge. The Court, noting that Reid had failed to except to the charge at trial, nonetheless examined the jury charge and found that it sufficiently covered every defense available to Reid and thus he suffered no harm. The conviction was affirmed. In *Jones v. State,* 53 Tex.Cr.R. 131, 110 S.W. 741 (1908), Jones was convicted of murder in the second degree. On appeal, Jones maintained the court erred in not charging the jury on the subject of alibi. On original submission, the conviction was affirmed. On rehearing, the Court wrote:

> "A case will not be reversed for the mere failure of the court to charge on the subject of alibi, unless a special charge submitted the issue is requested or an exception reserved at the time. We are the more constrained to do so in this case for the reason that the charge of the court herein in effect submitted the doctrine and issue of alibi, and the same was reasonably included in the charge herein copied. In any event, the failure of the court to charge on the law of alibi was not calculated to injure appellant." *Jones v. State,* 110 S.W. at 745.

This principle was again reiterated in *Wright v. State,* 73 Tex.Cr.R. 178, 163 S.W. 976 (1914), where Judge Harper, writing for the Court, stated that a case will not be reversed because of error in the jury charge "unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." 163 S.W. at 977.

In the main text of his opinion, Judge Clinton has referred us to only three cases prior to *Harris* which were reversed because of errors in the jury charge. Judge Davidson, writing in *Williams v. State,* 53 Tex. Cr.R. 2, 108 S.W. 371 (1908), stated that since the indictment charged burglary with intent to commit theft and the jury charge allowed the jury to convict if they believed Williams intended a felony or the misdemeanor crime of theft, the charge authoriz-

ed a conviction for an offense not charged. The same situation presented itself in *Moore v. State,* 84 Tex.Cr.R. 256, 206 S.W. 683 (1918), where Judge Davidson wrote:

> "It is error of a fundamental nature to authorize a conviction for any other offense than that charged, and this is true whether there was an exception reserved or not to the action of the court in so charging the jury." 206 S.W. at 684.

Although not articulated, there is no doubt that the defendants in these cases were harmed by such charges. The last pre-*Harris* reversal cited in the concurring opinion was *Garza v. State,* 162 Tex.Cr.R. 655, 288 S.W. 785 (1956), in which the Court held there was fundamental error because the jury charge gave erroneous instructions as to the law. Once again the defendant in that case was clearly harmed by the erroneous charge. But, as pointed out by all these cases, until *Harris,* there was no per se rule of reversal because of fundamental error. Reversals for errors in the jury charge were the exception and not the norm and could only be had when the court carefully examined the facts of each individual case and saw a definite harm to the defendant as a result of the error in the jury charge.

In the case now before us, the majority reverses on the ground that the charge to the jury omitted an essential element of the offense by failing to include the culpable mental state. An examination of the charge reveals otherwise. In the instructions, the jury was charged that:

> "Possession is a voluntary act if the possessor *knowingly* obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."

The jury was further instructed that in order to convict they must have found that appellant "possessed a firearm." In reading the charge as a whole, it is clear that, before the jury could convict, they had to find that appellant knowingly obtained or received the firearm. Further, the majority, in following the per se rule of *Harris,* fails to demonstrate how the appellant was harmed by this charge.

Not only should this conviction be affirmed, this Court should re-examine the holding in *Harris* and overrule it once and for all. Until such time as the majority recognizes and applies the statutes and caselaw of this State, I must dissent.

W. C. DAVIS, J., joins in this dissent.