Arthur H. JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 357–82.

Court of Criminal Appeals of Texas, En Banc.

April 24, 1985.

Ken J. McLean (court appointed on appeal & PDR only) Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., & Timothy G. Taft & Norman Davenport, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

A jury convicted appellant of attempted rape and assessed punishment at seven years' confinement and a $5,000 fine. The court of appeals for the first supreme judicial district affirmed the conviction. We granted appellant's petition for discretionary review to address alleged fundamental error in the charge.

In accord with our decision in *Almanza v. State,* 686 S.W.2d 157 (opinion on rehearing—delivered February 27, 1985), we remand this case to the court of appeals for further proceedings consistent with our opinion in *Almanza.*

ONION, P.J., and W.C. DAVIS, J., dissent to the remand.

TEAGUE, Judge, dissenting.

It now appears that "Almanza the Terrible," see *Kucha v. State,* 686 S.W.2d 154 (Tex.Cr.App.1985), (Teague, J., Concurring Opinion), which figure of speech is a shorthand rendition for this Court's decision of *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr. App.1985), gets his second victim, Arthur H. Johnson, appellant, in this cause. His first victim may be found in *Bonfanti v. State,* 686 S.W.2d 149 (Tex.Cr.App.1985).

The First Court of Appeals, because of the law then in existence, erroneously overruled appellant's assertion that the trial court's charge to the jury was fundamentally defective. Appellant relied upon, inter alia, this Court's decision of *Stidham v. State,* 590 S.W.2d 502 (Tex.Cr.App.1979), which appears to be an almost "white horse case" for appellant's assertion.

*Stidham v. State,* supra, held that in a prosecution for attempted aggravated rape, failure of the trial court to include in the application paragraph of the charge the culpable mental state of either "intentionally" or "knowingly" rendered the charge fundamentally defective. And that is ex-

actly what happened in this cause. The court of appeals, however, held that because the trial court had defined in the abstract portion of the charge the offense of criminal attempt the error was harmless.

The majority sustains the judgment of the court of appeals by holding that under *Almanza v. State*, supra, the error in the charge did not deprive appellant of a fair and impartial trial. I must ask: How can it be said that the appellant received a fair and impartial trial when the State was not required to prove beyond a reasonable doubt what it had alleged against him, but is still able to have appellant's conviction affirmed?

It is true that under *Almanza v. State*, supra, error in the court's charge will now be reversible error "only if the error is [found to be] so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'—in short 'egregious harm.' "

*Almanza v. State*, supra, also adopted a second test, which is to be used if the trial court's charge is first found to be egregious. This second test is used in determining whether the defective jury charge caused the defendant harm. It provides: "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."

What should be obvious to anyone is the fact that *Almanza v. State*, supra, has established an appellate test that I do not believe that any defendant will ever pass. Perhaps this is the "no pass-penitentiary" test of this Court. Compare, however, the "No Pass-No Play" rule that was recently enacted by the Legislature. I am firmly convinced that the amount of attention that the members of the bench and bar of this State should give to this Court's decision of *Almanza v. State*, supra, should at least equal the amount of attention the Legislatively enacted "No Pass—No Play" has received from parents and students of this State. Perhaps if that occurs, *Almanza v. State*, supra, will have a short judicial life.

However, but because of *Almanza v. State*, supra, trial judges of this State no longer have the legal duty and responsibility, as they once did, see Art. 36.14, V.A.C. C.P., to prepare for a jury a proper and correct charge on the law, and the law as may be applied to the facts adduced. It is now permissible for trial courts to give to jurors pieces of what may appear to them to be a jigsaw puzzle, for them to figure out what they must find in order to convict a defendant, or what they must not find in order to acquit a defendant. Jurors will now be able to convict defendants on elements which are not stated in the charging instrument. There will no longer be a division of responsibility which formerly existed between the trial court and the jury, which formerly was the backbone of our jury system. The application paragraph in the charge no longer has any meaning. Abstract definitions in the court's charge, which definitions are much like words found in a dictionary in that they are useless until correctly used in a sentence, will now govern. After *Almanza v. State*, supra, jurors will often be given the opportunity to second-guess the trial court as to what the law is by assuming the trial court inadvertently omitted a required element of the offense, just because an abstract definition in the charge includes the omitted element. No longer will it be required that the charge to the jury should resemble a gem that has been cut and polished by the hard edge of legal experience obtained from both within and without our criminal justice system. It will now be permissible to serve jurors with a flawed jewel. The office of the jury will no longer be to simply adjudge what the facts of the case might be; they will now be required to carry out a function that they have not enjoyed for over four hundred years, namely, to decide what the law might be in a given case. Cases of this Court such as *Doyle v. State*, 631 S.W.2d 732 (Tex.Cr. App.1982) (On State's Motion for Rehearing), and the cases cited in *Doyle*, supra,

are no more. They can presently be found in Davy Jones's foot locker which is located at the bottom of the Gulf of Mexico, where the majority of this Court has ordered that they be sent.

*Almanza v. State*, supra, should be expressly overruled by this Court. To the failure of the majority to expressly overrule *Almanza v. State*, supra, I must and will continue to respectfully dissent each time it is invoked and applied in a decision by this Court.

ONION, Presiding Judge, dissenting.

Appellant was convicted of attempted rape. The jury assessed punishment at seven (7) years' imprisonment and at a fine of $5,000.00.

On appeal in his sole ground of error appellant contended the "main charge applying the law to the facts is fundamentally defective for failing to include the required culpable mental state of 'knowingly' or 'intentionally.'" There was no objection to the charge so the appellant necessarily relied upon a claim of fundamental error.

The Houston (1st) Court of Appeals affirmed the conviction. *Johnson v. State*, (Tex.App.—Houston [1st], No. 01–81–0407–CR, March 18, 1982). The panel opinion distinguished *Stidham v. State*, 590 S.W.2d 502 (Tex.Cr.App.1979), cited by appellant, and called attention to the jury charge as a whole. The court noted that the trial court had abstractly charged the jury after charging on the law of rape that:

"A person attempts to commit an offense if, *with specific intent* to commit an offense, he does more than mere preparation that tends, but fails to effect the commission of the offense intended."

The Court of Appeals acknowledged the "charging paragraph" did not include "intentionally" or "intent" but noted the earlier instruction on specific intent, and that in *Dovalina v. State*, 564 S.W.2d 378 (Tex.Cr. App.1978), it was held that "attempt" may be substituted for "intent," and "attempt-ed" had been used in the paragraph applying the law to the facts.

Thereafter the Court of Appeals wrote:

"The record in our case reveals the following:

"(1) Appellant was adequately represented by counsel at trial;

"(2) The conviction was supported by overwhelming evidence of appellant's guilty;

"(3) There was no objection made to the court's omission of the words 'knowingly' or 'intentionally' from the charge;

"(4) There was no allegation or suggestion that the omission of the words 'knowingly' or 'intentionally' caused any harm to appellant, nor is it conceivable that it could have caused or even contributed to his conviction; and

"(5) The prosecutor in his closing argument told the jury that they must find that appellant had the intent to rape before they could convict him.

*"We hold that if there was error, it was not calculated to injure the rights of appellant and that from the record it is clear that appellant received a fair and impartial trial.*

"Under these circumstances, to say that the omission of these words is fundamental or even error, would be illogical because there is no relation between due process and the failure of the court to specifically use the word 'intent' or 'intentionally' in the charging paragraph. *This is especially true when considered in the light of Tex. Code Crim.Pro.Ann. art. 36.19."* (Emphasis supplied.)

On June 23, 1982, this Court granted appellant's petition for discretionary review to determine the correctness of the holding of the Court of Appeals.

On February 27, 1985, this Court handed down *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), establishing the test for fundamental error in the court's charge. This Court wrote:

"After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 ac-

tually separately contains the standards for *both* fundamental error and ordinary reversible error. If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

"On the other hand, if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'

"In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."

It is surprising how close the Court of Appeals followed the test required by our recent decision in *Almanza.* In effect the Court of Appeals has already applied the *Almanza* test. And yet today the majority remands this case to the Court of Appeals for reconsideration in light of *Almanza,* something which has in effect already been done.

Still further, a judge of this Court (other than this writer) has already considered appellant's petition and I adopt what he has written:

"V.T.C.A., Penal Code, Section 15.01(a), states:

A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

The elements of Sec. 15.01(a) are: (1) a person; (2) with specific intent to commit an offense; (3) does an act amounting to more than mere preparation; (4) that tends but fails to effect the commission of the offense intended. *Torres v. State,* 618 S.W.2d 549 (Tex.Cr.App.1981); *McCravy v. State,* 642 S.W.2d 450, 455 (Tex.Cr.App. 1980).

"The indictment correctly alleged all the requisite elements of the offense:

*having intent to commit rape,*[1] attempt by force and threats to have sexual intercourse with A___ C___, a female not his wife and hereafter styled the Complainant, without the consent of the Complainant, by hitting, striking and choking the Complainant with his hands and fists.

"The charge to the jury set out the statutory definition of the offense of rape and the statutory definition of attempt. The paragraph applying the law to the facts stated:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 5th day of December, 1980, in Harris County, Texas, the defendant, ..., did, without the consent of *(Complainant),* a female, and by the use of force or threats *attempt*[2] to have sexual intercourse with the said *(Complainant)* by hitting, striking and choking the said *(Complainant),* and that the said *(Complainant)* was not then and there the wife of said defendant, then you will find the defendant guilty of attempted rape, as charged in the indictment.

"Prior to this Court's opinion in *Almanza v. State,* No. 242–83 [686 S.W.2d 157] (opinion on rehearing, delivered February 27, 1985), such a charge required automatic reversal. *Sears v. State,* 651 S.W.2d 262 (Tex.Cr.App.1982); *Stidham v. State,* 590 S.W.2d 502 (Tex.Cr.App.1979). In accord with *Almanza,* we now determine if the error is 'so egregious and created such harm that [appellant] "has not had a fair

---

**1.** Emphasis added.

**2.** Emphasis added.

and impartial trial." ' *Almanza,* p. 23 [171]. We review the case by examining the entire jury charge, the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information in the record. *Almanza,* supra, p. 23 [171].

"The complainant testified that on December 5, 1980, at about 1:00 a.m., her friend Rose Richards drove her to her apartment. The complainant noticed a man wearing a blue and white Houston Oiler warm-up standing on the sidewalk of the apartments. She walked to her apartment and unlocked the door. The man wearing the blue and white warm-up, identified as appellant, walked up behind her, pushed her inside the apartment, and told her he wanted to use her phone because his car had been towed away.

"Appellant apparently telephoned his grandmother in an attempt to locate his brother. He told the complainant that he had to wait until he could contact his brother because his brother was not at home. Then complainant told appellant to leave and use a pay phone. She also told him that her boyfriend was coming over. After some discussion, appellant said, 'You are lying and nobody is coming over here.' He told the complainant to take off her clothes and began choking her, forcing her to the floor. She struggled with him but he knocked her down and pulled off her clothes. He pulled his pants down to his ankles and attempted to have sexual intercourse. The complainant testified that appellant had an erection and told her to 'stick it in,' and tried to do so himself. The complainant continued to struggle and eventually got away from appellant. She grabbed a glass vase from the table and hit him across the neck, breaking the vase. She hit him again with another small vase and struggled with him. Finally, she pushed her portable television into his face. Appellant was bleeding profusely. The complainant was screaming and yelling, and appellant said, 'I'll leave,' and ran out the door.

"The complainant positively identified appellant in a photograph from among a group of photographs shown to her by the Houston police. She also identified him in a lineup at the police station.

"Rose Richards testified that she recognized appellant as the man in the blue and white warm-up jacket who was standing on the sidewalk at the complainant's apartments on December 5, 1980. She also identified appellant in a photograph and a lineup.

"Kenneth Tyler testified that he owned a car storage lot in Houston. He said appellant claimed a car that had been towed from the Deer Creek apartments on December 4, 1980. The complainant lived in the Deer Creek apartments.

"The defense rested without presenting any witnesses or any evidence. The State's witnesses' testimony was uncontradicted and unimpeached.

"During argument to the jury at the guilt-innocence stage, defense counsel stated the definition of criminal attempt under V.T.C.A. Penal Code, Sec. 15.01. He stated that specific intent was required along with 'an act that would make a person culpable.' The gist of his argument was that appellant's acts had not gone far enough to 'justify this criminal label.' He emphasized that appellant's acts did not go beyond mere preparation and that the jury had to remember that the whole episode was based upon the complainant's story.

"Specific intent was not made a contested issue in the case, either during argument or during presentation of the case. The evidence presented does not reflect that it was either a close issue or an issue at all.

"The court's charge informed the jury that appellant was charged with aggravated rape, to which appellant had pleaded not guilty. It contained statutory definitions of rape and criminal attempt, including the specific intent requirement. Then the charge stated:

In this case, the indictment having charged that the Defendant attempted to

have sexual intercourse with [the Complainant] by force or threats, before you would be warranted in finding Defendant guilty, you must be satisfied from the evidence beyond a reasonable doubt that the attempted sexual intercourse, if any, by the Defendant with [the Complainant], was attempted by the use of actual force or threats and without the consent of the said [complainant].

"The application paragraph appeared next, omitting the culpable mental state.

"After reviewing all of the foregoing information and noting the absence of any contradictory or impeaching testimony about the events, the absence of evidence showing lack of intent, the fact that no one and no evidence raised an issue as to the specific intent, and the inclusion of the statutory definition of criminal attempt, we hold that the error in the charge did not deprive appellant of a fair and impartial trial.

"In light of the evidence, the argument explaining (to some extent) criminal attempt, and the entire charge, we hold that appellant was given a fair and impartial trial.

"The judgments of the court of appeals and of the trial court are affirmed."

What purpose can be served by now remanding this case to the Court of Appeals to do what it has already done, and after much consideration has already been given here on the sole ground of error in light of *Almanza*. At some point this case must come to an end. The mania for remanding any matter relating to a jury charge to the Courts of Appeals for reconsideration in light of *Almanza* must cease. The constant orbiting of cases in appellate courts only serves to unduly delay the finality of criminal cases and defeat judicial economy.

Upon remand the Court of Appeals will repeat what it has already done, particularly in light of *Almanza*, and then appellant may again file a petition for discretionary review for this Court to consider. The administration of justice is not well served by the majority's remand.

I vigorously dissent.

W.C. DAVIS, J., joins this opinion.