**Raymond LANG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1026–82.**

Court of Criminal Appeals of Texas,
En Banc.

June 19, 1985.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty. and R.K. Weaver, Mike Nelson & Steve H. Miller, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

---

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

This case is before us on State's petition for discretionary review. A jury found appellant guilty of theft of a ring of the value of at least $200 but less than $10,000. Enhanced by a prior theft conviction, the jury assessed punishment at five years. The Dallas Court of Appeals reversed, concluding that the charge was fundamentally defective because it authorized conviction on a theory not alleged in the indictment. *Lang v. State,* 642 S.W.2d 68 (Tex.App.—Dallas 1982).

Recently in *Almanza v. State* 686 S.W.2d 157, 171 (Tex.Cr.App.1985) (Opinion on State's Motion for Rehearing), this Court set out the proper standard for review of fundamental error in the court's charge under Article 36.19, V.A.C.C.P.:

"... if no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.' " 686 S.W.2d at 171

The determination as to fundamental error must be made by reviewing

"the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." 686 S.W.2d at 171.

We now remand this cause to the Court of Appeals for further proceedings consistent with our opinion in *Almanza.*

ONION, P.J., dissents to remand.

CLINTON, Judge, concurring.

My dissenting Brother Teague is so determined to fulminate against the opinion of this Court in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985), that he blinks reality in at least one major and in a couple of relatively minor respects.[1]

A major reality of the "egregious harm" formulation developed in *Almanza* is that it is reactionary in the salutary sense that there is ample precedent to guide appellate courts in applying the test. Indeed, the opinion takes great pains to examine interpretations and constructions of former code of criminal procedure article 743 by judges of the Court soon after it became law in order to demonstrate that in truth and fact "egregious harm" of *Almanza* is substantially and in essence "fundamental error" as then perceived by judges who as state

---

1. He also overlooks or has forgotten that in *Doyle v. State,* 631 S.W.2d 732 (Tex.Cr.App.1982) (Opinion on Rehearing), writing the leading opinion of the Court he insisted:

"In each case appealed to this Court, [Article 36.19, V.A.C.C.P.] implicitly requires that we are to make the determination whether or not there is error of omission or commission in a jury charge, and if we find there is, we must

then make the determination whether or not the error was calculated to injure the rights of the defendant, and also determine, if such error exists, whether or not it prevented the defendant from receiving a fair and impartial trial." *Id.,* at 736.
Now compare *Almanza,* Part I, subpart C, at 171–172.

senators had sponsored and supported the legislative enactment in 1913. See *Almanza*, Part I, subpart B, at 167–171.

Now as then the judge of a trial court bears the ultimate responsibility to prepare and submit to the jury a correct charge on the law, or suffer appellate revision if error is properly presented or claimed, and nothing in *Almanza* will excuse a failure to discharge that responsibility. What *Almanza* really undertakes to change is pointedly identified, *viz:*

> "The modern trend of the Court first to label certain errors 'fundamental' then *automatically reverse* convictions without regard to the nature and harm of the error in the case, [which] with *Robinson [v. State*, 553 S.W.2d 371 (Tex.Cr.App. 1977)] ... became almost suddenly firmly entrenched as a policy of the Court." *Id.*, at 172–173.[2]

*Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App.1979), had catalogued kinds of "fundamental error" in charges of the trial court that were generally perceived to call for reversal. Accordingly, *Almanza* overruled *Cumbie* "[t]o the extent it holds any charge error requires 'automatic' reversal," as well as "all other opinions inconsistent herewith." *Almanza*, at 174.[3]

As to whether "egregious harm" is, as Judge Teague insists, "a test on appeal that no convicted person can ever pass," the reality is that one need only examine past opinions that are *not* inconsistent with *Almanza*. Several are cited in *Almanza* at 172; a noteworthy one is *Ross v. State*, 487 S.W.2d 744 (Tex.Cr.App.1972), in which charge error was found to be "fundamental and calculated to injure the rights of the appellant *to the extent he has not had a fair trial*," in that it authorized conviction "under a theory not charged in the indictment" and the evidence was "insufficient to support a conviction ... under the alle-gations in the indictment." Compare *Jefferson v. State*, 487 S.W.2d 331 (Tex.Cr. App.1972).

Turning to the admixture of ethics and advocacy broached by Judge Teague, suffice to say that an advocate will "represent his client strenuously and faithfully as required by the Canons of Ethics [read Code of Professional Responsibility]" by pointing out defects in a charge to a jury when it is to his client's benefit to do so, rather than risk an appellate determination that what counsel believed to be "a fundamentally defective jury charge" is not that at all. The instant case illustrates the reality of how alert and effective advocacy in the trial court might well have saved the day for appellant *qua* accused.

The indictment alleged ingredients of theft by appropriation and particularized that "such appropriation was without effective consent *since no assent in fact was given by the owner* ...." The facts of the matter are, according to the court of appeals, that while Cathy Moorehead, the complainant, and friends were seated in a restaurant, appellant joined and engaged them in conversation. Noticing that Moorehead was wearing a gold ring with a small diamond, appellant requested to see the ring; *she took it off her finger and handed it to him*, subjectively expecting him to look at it and return it to her. Soon displeased with aspects of his conversation, "to escape" appellant Moorehead and friends left the restaurant, forgetting momentarily that appellant still had her ring. Appellant and a companion followed them out, and appellant grabbed a purse from one of her friends and fled. He was seen several days later and arrested.

Before the court of appeals the State acknowledged that "the evidence shows that appellant had the owner's permission when he originally acquired possession [of

---

**2.** All emphasis is mine unless otherwise indicated.

**3.** Relying on *Cumbie's* classification of errors, the Dallas Court of Appeals found fundamental error in the instant charge. *Lang v. State*, 642 S.W.2d 68, 69–70 (Tex.App.—Dallas 1982). That we remand "for further proceedings consistent with our opinion in *Almanza* " means only that it and other courts of appeals should no longer find that any error in the *Cumbie* catalogue *automatically* requires reversal of a judgment of conviction. See *Almanza*, Part II.

the ring]." *Lang v. State,* supra. at 69. However, its theory was that "the material time of appellant's intent is when he actually appropriated it without her consent." *Ibid.* Thus the charge did not require the jury to find, as alleged in the indictment, that "appropriation was without effective consent since *no assent in fact was given by the owner.*" Rather, it instructed the jury that "it is necessary that the State establish by the evidence beyond a reasonable doubt that at the time of the appropriation of the property, if any, the defendant appropriated the same *by means of deception* . . . , and it authorized the jury to find appellant guilty if it believed that appellant did appropriate the ring "without the *effective* consent of the owner," Moorehead.

Putting aside propriety of the charge under the circumstances, for that is for the court of appeals to decide on remand, I suggest that had counsel strenuously objected to the instruction and the application paragraph and persuaded the court to substitute therefor instructions that comported with allegations of the indictment, he would have been in a better position to convince the jury that contrary to the allegation "no assent in fact was given by the owner," she did indeed give her permission for appellant to take the ring. Failing that, however, the error would have been preserved, and under the other feature of *Almanza* "reversal is required if the error is 'calculated to injure the rights of appellant,' which means no more than there must be *some* harm to the accused from the error," *id.,* at 171 (emphasis in original).

As it was though counsel found himself having to argue against a theory of "deception" so esoteric that a jury, knowing full well that his client made off with the ring, was not likely to devote a great deal of time and effort trying to sort it all out.

It may not be unethical for a lawyer who spots what he believes (hopes?) will turn out to be "a fundamentally defective jury charge," to remain silent about it, but surely it is not effective advocacy to remain silent about failure of a charge to instruct the jury in line with a crucial allegation in the indictment when the evidence is such as to amount to a defense to the accusation.

In my judgment *Almanza* tends to encourage the ethical advocate for an accused "to represent his client strenuously and faithfully" in the matter of efficacy of the charge in protecting rights of his client. That is, after all, a responsibility which "rests on the shoulders of defense counsel." Moses, Criminal Defense Sourcebook, § 13.20, p. 438. One who shirks that responsibility risks an appellate finding that the trial judge adequately discharged the statutory duty and function imposed by Article 36.14. It will then be too late to say that by remaining silent defense counsel was carrying out his role of advocate rather than being pressed into service as "an adjunct, unpaid briefing attorney for the trial judge."

With those observations I join the opinion and judgment of the Court.

TEAGUE, Judge, dissenting.

I must respectfully dissent to the majority opinion because I believe that the opinion authored by Chief Justice Guittard of the Dallas Court of Appeals, see *Lang v. State,* 642 S.W.2d 68 (Tex.App.—Dallas 1982), has correctly decided the issue that is now before this Court; thus, such decision should not be disturbed by this Court.

Furthermore, but because I am compelled to continue to subscribe to my view that this Court's decision of *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985) (Opinion on State's Motion for Rehearing), see my previous comments stated in the opinions I filed, see, for example, in *Johnson v. State,* 688 S.W.2d 560 (Tex.Cr.App. 1985); *Kucha v. State,* 686 S.W.2d 154 (Tex.Cr.App.1985); *Bonfanti v. State,* 686 S.W.2d 149 (Tex.Cr.App.1985), is legally erroneous, as to when unobjected to error in the trial court's charge constitutes fundamental error on appeal, this is another reason why I must respectfully dissent.

Article 36.14, V.A.C.C.P., expressly places the sole legal responsibility on the

trial judge, and no other person, to initially prepare a correct charge on the law, and on the law of the case as may be applied to the facts adduced. "This is a legal duty which must be performed by the trial judge. It may not be delegated to the attorneys for the respective parties, the court reporter of the court, or anyone else for that matter." *Doyle v. State*, 631 S.W.2d 732, 738 (Tex. Cr.App.1982).

This Court's decision of *Almanza v. State*, supra, however, albeit done implicitly, changes all of the above, because it holds that it is no longer the sole responsibility of the trial judge to initially prepare a correct charge on the law, and on the law as applied to the facts adduced. Now, instead, for purposes of a defendant complaining on appeal about unobjected to error in a trial court's charge as constituting fundamental error, that legal responsibility rests, not solely with the trial judge, as the law clearly mandates, see Art. 36.14, supra, but rests collectively with counsel for the accused. Interestingly, *Almanza v. State*, supra, does not expressly refer to any legal duty or responsibility that a prosecuting attorney might have in seeing that a correct final charge is given the jury. See, however, Art. 36.15, V.A.C.C.P. Shouldn't *Almanza v. State*, supra, be amended to also provide that the trial judge have at least two unpaid briefing attorneys when he prepares the initial charge to the jury?

Another reason *Almanza v. State*, supra, was wrongly decided is that the opinion makes it obvious that, regarding unobjected to error in the trial court's charge to the jury and whether such constitutes fundamental error, this Court has devised a test on appeal that no convicted person can ever pass on appeal. I believe that the declared test is this Court's "No pass, Penitentiary" rule.

Previously, when it came to the preparation of the original trial court's charge, a criminal defense attorney of this State was an advocate, and not an adjunct, unpaid briefing attorney for the trial judge. Cf. Number 131 of the State Bar of Texas' Committee on Interpretation of the Canons of Ethics, June, 1956, which states that an attorney for the accused, who discovers a fatal and fundamental defect in the indictment, is not obligated to bring such error to the attention of the trial court. Thus, previously, but ethically at least, the attorney for the accused, when confronted with a fundamentally defective charging instrument or, as applied to this cause, a fundamentally defective jury charge, was free to proceed to try the case knowing that in the event of conviction a reversal would follow. This was in accordance not only with the State Bar's Canons of Ethics but with his role as an advocate. The rationale for the rule pertaining to the defense attorney's role as an advocate is that to require the attorney for the accused to, for example, point out defects in a charging instrument or in the trial court's initial charge, when it was to his client's benefit not to do so, would have been inconsistent with the attorney's role as an advocate to represent his client strenuously and faithfully as required by the Canons of Ethics of the State Bar of Texas.

Today, however, when it comes to the original, and oftentimes final, trial court's charge to the jury, *Almanza v. State*, supra, changes all of the above and relegates the criminal defense attorney to little more than an aide, or an unpaid briefing attorney, to the trial judge.

For all of the above reasons, the Dallas Court of Appeals' decision should be affirmed and *Almanza v. State*, supra, should be expressly overruled. The majority, however, reverses the decision of the Dallas Court of Appeals and fails to expressly overrule *Almanza v. State*, supra. To such commission and omission by this Court, I am compelled to respectfully dissent.